**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

TASER International, Inc.,           )    No. 07-042-PHX-MHM
                                    )
                Plaintiff,          )
                                    )
vs.                                 )
                                    )
Stinger Systems, Inc.,              )
                                    )
                Defendant.          )
                                    )
_____     )

Currently before the Court is Plaintiff TASER International, Inc.'s motion to dismiss or strike Defendant Stinger Systems, Inc.'s inequitable conduct defense for failure to plead with particularity pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure.  (Dkt. #55).  After reviewing the pleadings, the Court issues the following order.

**I.    BACKGROUND**

On January 5, 2007, TASER International ("TASER") filed an action against Stinger Systems ("Stinger") alleging infringement of U.S. Patent 7,145,762 ("the '762 patent") under 35 U.S.C. § 271, false advertising under 15 U.S.C. § 1051 *et seq.*, and false marketing under 35 U.S.C. § 292.  (Dkt. #1).  Both TASER and Stinger manufacture and sell electronic control devices ("ECD") commonly known as "stun guns."  (Second Amended Compl., Dkt. #51, p.2).  TASER amended its complaint on July 9, 2007 to add infringement claims for two additional patents, U.S. Patent 6,999,295 ("the '295 patent")

and U.S. Patent 7,102,870 ("the '870 patent").  (First Amended Compl., Dkt. #32).

Thereafter, on October 10, 2007, the parties stipulated to a second amended complaint in

which TASER dropped all claims related to the '762 patent originally asserted and added

claims pertaining to a fourth patent, U.S. Patent 7,234,262 ("the '262 patent").

On November 6, 2007, Stinger filed an answer and counterclaim for false

advertising under 15 U.S.C. § 1125(a) to TASER's second amended complaint.  (Answer

to Second Amended Compl., Dkt. #54).  Stinger asserted a number of affirmative

defenses, including statute of limitations, laches, waiver, estoppel, unclean hands, patent

misuse, and inequitable conduct.  (Dkt. #54, pp. 4-5).  Stinger specifically contends that

the TASER patents asserted against Stinger (the '295, '870, and '262 patents) are

"unenforceable due to inequitable conduct in the preparation and/or prosecution of the

patents before the U.S. Patent Office, due to failure to disclos[e] the known prior art stun

gun." (Dkt. #54, ¶10).

In its answer, Stinger states that sometime in 1982-83, TASER sold a product

named "Police Special Model Taser" that "used two capacitors in parallel to discharge an

arcing shock with one capacitor discharging a current at lower voltage into the existing

ionization path established by discharge of the first capacitor."  (Dkt. #54, ¶9).  Stinger

asserts that this Model Taser constitutes prior art that invalidates some or all of the claims

asserted, and that it "was not disclosed by Plaintiff to the U.S.P.T.O."  (Dkt. #54, ¶9).

The answer goes on to state that "[t]he '870 and '245 patents asserted by Taser

originate with application No[.] 10/364,164 filed in 2003," that "[p]rior to 2003 Taser had

knowledge of a competitor's stun gun using 2 capacitors," and that "Taser did not

disclose the prior art stun gun sold by its competitor (Taser Industries, Inc.) to the Los

Angeles police department."  (Dkt. #54, ¶11).  As such, Stinger asserts that "[t]he

existence of the prior art device using a second capacitor was clearly material in light of

the examiner's reasons for allowance, yet it was concealed by Taser and not disclosed to

the examiner."  (Dkt. #54, ¶11).

Stinger's answer specifically points to the patent office examiner's finding that "the claims of the '295 patent and the claims in the application that ultimately lead to the '870 patent are both directed toward electronic disability devices that use two different transformers to first create an arc and then maintain current flow across the arc to disable a subject" (Dkt. #54, ¶12).  The answer also points to TASER's subsequent decision to cancel the claims in the '870 patent that related to use of two different transformers, but not to amend the claims in the '870 patent insofar as they related to maintaining current flow across an established arc.  (Dkt. #54, ¶13).

In addition, Stinger's states that since 1999, several years before it made the application for the inventions claimed in the '262 patent, TASER has produced a Model M26, which records the time, date, and length of each activation.  (Dkt. #54, ¶14).  As such, Stinger asserts that "[a]t no time during prosecution of the ['262] application did Taser disclose that it had sold embodiments fo the claimed inventions more than 1 year prior to the date of application and that, therefore the inventions are unpatentable." (Dkt. #54, ¶14). Likewise, Stinger claims that "[a]t no point in prosecuting its application for the patents at issue did Taser disclosure to the examiner that for several years prior to the date of application Taser manufactured a Model M26, embodying the indicator display of claim 2 of the '870 patent."  (Dkt. #54, ¶15).

Stinger sums up its inequitable conduct defense by alleging the following:

> Taser, with intent to mislead or deceive the examiner failed to disclose material information or submitted materially false information to the PTO during prosecution of the asserted patents.  Taser was fully aware of a prior art device and Taser was aware of the materiality of this device from the statement of the examiner in the prosecution of the patents.  Taser had obtained and examined this competitors' product and did not disclose the results of those investigations to the patent office in seeking patent protection.  Taser has not provided any credible explanation for failing to disclose the prior art to the Patent Office.  The prior art technology invalidates the asserted patents and is material.  Taser was aware of this prior art and did not disclose this prior art as required by the duty of candor.

(Dkt. #54, ¶16).  Stinger goes on to state that "[i]n addition to the patents not asserted, the failure to disclose the LAPD stun gun constituted inequitable conduct in the prosecution of the previously asserted 7,145,762 patent."  (Dkt. #54, ¶17).  Finally, Stinger contends

1   that "[i]nventions claimed in the asserted Patents were made, used and sold more than one

2   year prior to the date of application for said patent and are not the inventions of any

3   applicant therefore.  They existed as prior art, and, moreover, Plaintiff Taser knew of their

4   existence as prior art and willfully withheld such knowledge from the United States

5   Patent and Trademark Office of the Department of Commerce and the examiners thereof.

6   The invention claims should be invalidated as prior art."  (Dkt. #54, ¶19).

7        On November 29, 2007, TASER filed the instant motion to dismiss or strike

8   Stinger's inequitable conduct defense for failure to plead with particularity under

9   Fed.R.Civ.P. 9(b).  (Dkt. #55).  Specifically, TASER contends that Stinger's answer "fails

10  to allege (I) the identity of those involved in the prosecution of the patents-in-suit who

11  knowingly omitted material prior art with intent to deceive; (ii) when or how those

12  individuals became aware of specifically identified and allegedly material prior art; (iii)

13  how the alleged prior art was material to the patents-in-suit; or even (iv) exactly what the

14  alleged prior art consisted of."  (Dkt. #55, p.2).

15  **II.   LEGAL STANDARD**

16       Allegations of inequitable conduct must satisfy the pleading requirements of

17  Fed.R.Civ.P. 9(b).  <u>Multimedia Patent Trust v. Microsoft Corp.</u>, 525 F.Supp.2d 1200,

18  1213 (S.D.Cal. 2007) (citing <u>Cent. Admixture</u>, 482 F.3d at 1356; 5A Charles Alan Wright

19  & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1297 n. 28 (3d ed. 2004);

20  <u>see</u> <u>Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega</u>

21  <u>Systems, LLC</u>, 350 F.3d 1327, 1344 (Fed. Cir. 2003) ("[I]nequitable conduct, while a

22  broader concept than fraud, must be pled with particularity.").  "[A]n inequitable conduct

23  defense to a patent infringement claim may be stricken pursuant to Rule 12(f) for failure

24  to plead with particularity."  <u>Id.</u> at 1211 (citing <u>Chiron Corp. v. Abbott Labs.</u>, 156 F.R.D.

25  219, 220-21 (N.D.Cal. 1994)).  A motion to dismiss for failure to plead with particularity

26  is the functional equivalent of a motion to dismiss under Fed.R.Civ.P. 12(b)(6).  <u>Vess v.</u>

27  <u>Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1107 (9th Cir. 2003).  Thus, if a claim is not pled

28  with sufficient particularity under Fed.R.Civ.P. 9(b), a court may dismiss it for failure to

1   state a claim on which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6).

2   Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001).

3          In determining both Fed.R.Civ.P. 12(b)(6) motions to dismiss and Rule 12(f)

4   motions to strike, all allegations of material fact must be taken as true and construed in

5   the light most favorable to the nonmoving party.  Compare Wyler Summit Partnership v.

6   Turner Broad. Sys. Inc., 135 F.3d 658, 661 (9th Cir. 1998) ("On a motion to dismiss, all

7   well-pleaded allegations of material fact are taken as true and construed in a light most

8   favorable to the non-moving party.") with Multimedia Patent, 525 F.Supp.2d at 1210-11

9   ("In determining a motion to strike, a district court must view the pleadings in the light

10  most favorable to the pleader.").  In addition, 12(b)(6) and 12(f) motions are both

11  generally disfavored; but the court may properly grant them when the claim or defense is

12  insufficient as a matter of law.  Compare Gilligan v. Jamco Development Corp., 108 F.3d

13  246, 249 (9th Cir. 1997) ("The motion to dismiss for failure to state a claim is viewed

14  with disfavor and is rarely granted.") with Multimedia Patent, 525 F.Supp.2d at 1211

15  ("Motions to strike an affirmative defense are generally disfavored, but the court may

16  properly grant them when the defense is insufficient as a matter of law.").

17          Fed.R.Civ.P. 9(b) requires that "[i]n alleging fraud or mistake, a party must state

18  with particularity the circumstances constituting fraud or mistake."  The requirement to

19  plead fraud with particularity ensures that the accused party has sufficient notice of the

20  specific misconduct that is allegedly fraudulent "so that they can defend against the

21  charge and not just deny that they have done anything wrong."  Bly-Magee v. California,

22  236 F.3d 1014, 1019 (9th Cir. 2001).  It also protects the accused's reputation from harm

23  and minimizes costly fishing expeditions.  Id. at 1018.

24          "While statements of the time, place and nature of the alleged fraudulent activities

25  are sufficient, mere conclusory allegations of fraud are insufficient."  Moore v. Kayport

26  Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989).  Stinger's allegations of fraud

27  must be specific enough to "give the defendant notice of the particular misconduct which

28  is alleged to constitute the fraud charged so that they can defend against the charge and

1   not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727,

2   731 (9th Cir. 1985). Thus, Stinger's "[a]verments of fraud must be accompanied by "'the

3   who, what, when, where, and how'" of the misconduct charged." Vess, 317 F.3d at 1106

4   (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)); Neubronner v. Milken, 6

5   F.3d 666, 671 (9th Cir. 1993) ("The complaint must specify such facts as the times, dates,

6   places, benefits received, and other details of the alleged fraudulent activity.").

7       However, "[m]alice, intent, knowledge, and other conditions of a person's mind

8   may be alleged generally." Fed.R.Civ.P. 9(b). In addition, Stinger need not "allege, in

9   detail, all facts supporting each and every instance of [fraud] over a multi-year period."

10  U.S. ex rel. Lee v. Smithkline Beecham, Inc., 245 F.3d 1048, 1051 (9th Cir. 2001) (citing

11  Cooper, 137 F.3d at 627).

12      Inequitable conduct is the breach of the patentee's duties to the United States

13  Patent and Trade Office ("PTO") of candor, good faith, and honesty. See

14  Warner-Lambert Co. v. Teva Pharms. USA, Inc., 418 F.3d 1326, 1342 (Fed. Cir. 2005).

15  Inequitable conduct can occur through the affirmative misrepresentation of a material

16  fact, the failure to disclose material information, or the submission of false information

17  coupled with an intent to deceive. Id.; B.F. Goodrich Co. v. Aircraft Braking Systems

18  Corp., 72 F.3d 1577, 1585 (Fed. Cir. 1996). In this case, Stinger's inequitable conduct

19  defense is based on its allegation that TASER failed to disclose material information. "A

20  party may show inequitable conduct by producing clear and convincing evidence of: (1)

21  material prior art; (2) knowledge chargeable to the patent applicant of prior art and its

22  materiality; and (3) applicant's failure to disclose the prior art to the PTO with intent to

23  mislead." Fox Industries, Inc. v. Structural Preservation Sys., Inc., 922 F.2d 801, 803

24  (Fed. Cir. 1990) (citation omitted).

25      "Applicants for patents are required to prosecute patent applications in the PTO

26  with candor, good faith, and honesty." Molins PLC v. Textron, Inc., 48 F.3d 1172, 1178

27  (Fed. Cir. 1995). Specifically, the duty to disclose information material to patentability to

28  the PTO during the prosecution of a patent application extends to (1) the inventor, (2)

1  each attorney or agent who prepares or prosecutes the application, and (3) those who are

2  substantively involved in the preparation or prosecution of the application and who are

3  associated with the inventor or the assignee, or with anyone to whom there is an

4  obligation to assign the application.  See 37 C.F.R. § 1.56; Molins PLC, 48 F.3d at 1178

5  n.6 (Fed. Cir. 1995).

6       "The withholding of information must meet thresholds of both materiality and

7  intent."  Molins PLC, 48 F.3d at 1178 (citing Allen Organ Co. v. Kimball Int'l, Inc., 839

8  F.2d 1556, 1567 (Fed. Cir. 1988) ("[M]ateriality does not presume intent, which is a

9  separate and essential component of inequitable conduct.").  Material information

10  includes "any information that a reasonable examiner would substantially likely consider

11  important in deciding whether to allow an application to issue as a patent."  Akron

12  Polymer Container Corp. v Exxel Container, Inc., 148 F.3d 1380, 1382 (Fed. Cir. 1998).

13  In addition, "[t]he intent element of the offense is . . . in the main proven by inferences

14  drawn from facts, with the collection of inferences permitting a confident judgment that

15  deceit has occurred."  Id. at 1385; see Bruno Independent Living Aids, Inc. v. Acorn

16  Mobility Services, Ltd., 394 F.3d 1348, 1354 (Fed. Cir. 2005) ("[I]ntent to deceive is

17  generally inferred from the facts and circumstances surrounding a knowing failure to

18  disclose material information."); B.F. Goodrich, 72 F.3d at 1585 ("In the absence of an

19  intent to deceive, courts cannot find inequitable conduct merely because patents are held

20  invalid over the relevant prior art.").  In sum, inequitable conduct by an applicant or his

21  representatives renders a patent unenforceable if the applicant "with intent to mislead or

22  deceive the examiner fails to disclose material information or submits materially false

23  information to the PTO during prosecution."  Digital Control, Inc. v. Charles Mach.

24  Works, 437 F.3d 1309, 1313 (Fed. Cir. 2006).

25       "Once threshold findings of materiality and intent are established, the court must

26  weigh them to determine whether the equities warrant a conclusion that inequitable

27  conduct occurred."  Molins PLC, 48 F.3d at 1178 (citing J.P. Stevens & Co. v. Lex Tex,

28  Ltd., 747 F.2d 1553, 1559-60 (Fed. Cir. 1984).

1    **III.    DISCUSSION**

2           Stinger identifies the allegedly material prior art as the "Police Special Model

3    Taser" ("PSMT"), an ECD sold by Taser Industries, Inc. to the Los Angeles Police

4    Department sometime around 1982-83.  Stinger also alleges that the PSMT was material

5    to the '295 and '870 patent applications because the PSMT "used two capacitors in

6    parallel to discharge an arcing shock with one capacitor discharging a current at lower

7    voltage into the existing ionization path established by discharge of the first capacitor,"

8    and the patent office examiner specifically found that "the claims of the '295 patent and

9    the claims in the application that ultimately lead to the '870 patent are both directed

10   toward electronic disability devices that use two different transformers to first create an

11   arc and then maintain current flow across the arc to disable a subject."  (Dkt. #54, p.5 ¶9,

12   p.6 ¶12).  In addition, Stinger alleges that the PSMT was both material to the '262 patent

13   application because TASER allegedly manufactured a Model M26 ECD that embodied

14   the inventions claimed in the '262 patent (for recording the time, date, and length of each

15   activation), and material to the '870 patent application because the Model M26 ECD

16   embodied the indicator display of claim 2 of the '870 patent.  (Id., p.6, ¶¶ 14, 15).  Stinger

17   further asserts that "Taser was fully aware of [the PSMT] and TASER was aware of the

18   materiality of this device from the statement of the examiner in the prosecution of the

19   patents," and that "Taser had obtained and examined [Taser Industries, Inc.]'s [PSMT]

20   and did not disclose the results of those investigations to the patent office in seeking

21   patent protection."  (Dkt. #154, pp. 6-7, ¶16).  The Court finds that Stinger has therefore

22   sufficiently alleged the "who, what, when, where, and how" of TASER's alleged

23   inequitable conduct before the PTO in the prosecution of the '295, '870, and '262 patents

24   in the PTO.  As such, the Court concludes that Stinger has pled its inequitable conduct

25   defenses with sufficient particularity to survive TASER's motion to dismiss.

26           Stinger has identified the prior art that it contends was allegedly withheld form the

27   PTO with sufficient circumstantial detail so that TASER can identify the specific,

28   allegedly material, prior art in question, and defend against the charge of inequitable

1   conduct due to TASER's alleged failure to disclose the stated prior art, i.e., the PSMT and

2   the Model M26 ECD.  Stinger's inequitable conduct pleadings need not identify by name

3   the individuals who were substantively involved in the preparation or prosecution of the

4   application of the patents in question.  See Fujisawa Pharmaceutical Co. Ltd. v. Kapoor,

5   814 F.Supp. 720, 726 (N.D.Ill. 1993) (stating that although Fed.R.Civ.P. 9(b) requires

6   that the time, place and contents of fraud be pled," the complainant need not plead

7   evidence."); U.S. ex rel. McCarthy v. Straub Clinic & Hosp., Inc., 140 F. Supp. 2d 1062,

8   1068 (D. Haw. 2001), 140 F. Supp. 2d at 1068 (holding that although the complaint did

9   not include "specific dates or people," it nevertheless "spell[ed] out with sufficient clarity

10  for what actions Defendants are expected to answer").

11          Indeed, "Rule 9(b) is not to be read blindly, but is to be applied in order to

12  effectuate the purposes of the rule which are: (1) to inform the defendants of the claims

13  against them and to enable them to form an adequate defense; (2) to eliminate the filing of

14  a conclusory complaint as a pretext for using discovery to uncover wrongs; and (3) to

15  protect defendants from unfounded charges of fraud which may injure their reputations."

16  Fujisawa Pharm., 814 F.Supp. at 726.  Clearly, as TASER points out, the "who" in an

17  inequitable conduct defense is limited to the patent inventor, his or her attorney or agent

18  who prepares or prosecutes the application, and those substantively involved in the

19  preparation or prosecution of the application.  TASER is in possession of "who" was

20  substantively involved in the preparation or prosecution of the patents in question, and

21  thus TASER is able to discover the specific individuals that were involved in the

22  preparation and prosecution of the patent applications and form an adequate defense.

23  Stinger need not establish the identity of those individuals in its pleadings and must be

24  given the chance to conduct discovery regarding the specifics as to "who" exactly were

25  involved in the preparation and prosecution of the patents in question.  For purposes of

26  pleading inequitable conduct, it is enough that Stinger alleged that TASER as the entity,

27  and therefore the inventors of the patents in question and their attorneys or agents as the

28  specific individuals, breached the duty of candor to the PTO.

1    Similarly, Stinger has alleged that if the PSMT and Model M26 ECD had been

2   disclosed in the prosecution of the patents in question before the PTO, then they would

3   have invalidated the asserted patents.  In addition, Stinger has specifically indicated the

4   basis for its contentions, as related above, by referring to the patent examiner's specific

5   statements and drawing comparisons between the alleged prior art and the inventions

6   claimed in the patents in question.  Thus, Stinger has adequately alleged that a reasonable

7   examiner would substantially likely consider the PSMT and Model M26 ECD important

8   in deciding whether to allow the applications to issue as patents.  See Akron Polymer, 148

9   F.3d at 1382.  In addition, matters of intent may be averred generally under Fed.R.Civ.P.

10   9(b); "intent to deceive is generally inferred from the facts and circumstances surrounding

11   a knowing failure to disclose material information."  Bruno Indep., 394 F.3d at 1354.

12    In Central Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C.,

13   the Federal Circuit upheld dismissal of an inequitable conduct defense that had been

14   based solely on allegations that "during prosecution of the . . . patent, the patentee failed

15   to disclose all of the relevant prior art known to it" and that "by manipulation of various

16   measurements and units, the patentee sought to mislead the Patent and Trademark Office

17   regarding the relationship between the claimed invention and the prior art."  482 F.3d

18   1347, 1356 (Fed. Cir. 2007).  Clearly, those allegations were insufficient to inform

19   anyone the defendants of the claims against them and to enable them to form an adequate

20   defense rather than just deny that they had done anything wrong.  However, here Stinger

21   has alleged more than mere conclusory allegations of fraud, and has identified TASER,

22   and thus the inventors of the patents in questions and their attorneys and agents, as the

23   individuals that have breached the duty of candor to the PTO, and the prior art which was

24   allegedly withheld from the PTO.  Given the circumstantial information in Stinger's

25   inequitable conduct pleading, the mere fact that Stinger did not put a name to the

26   inventors or the attorneys/agents involved in the prosecution of the patents in question or

27   specify the exact dates that a specific individual became aware of the specified prior art

28   does not mean that Stinger's pleading fails the Rule 9(b) standard.  As such, the Court

finds that Stinger's inequitable conduct pleadings satisfy Fed.R.Civ.P. 9(b)'s heightened pleading requirement for allegations of fraud.  Stinger may proceed to discovery on its alleged inequitable conduct defense that the inventors and/or their attorneys or agents failed to disclose the stated, allegedly material, prior art coupled with an alleged intent to deceive in the preparation or prosecution of the patents in question before the PTO.

**Accordingly,**

**IT IS HEREBY ORDERED** that Plaintiff TASER's motion to dismiss or strike Defendant Stinger's inequitable conduct defenses for failure to plead with particularity under Fed.R.Civ.P. 9(b) is DENIED.  (Dkt. #55).

DATED this 5th day of September, 2008.

Mary H. Murguia
United States District Judge

- 11 -