**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| TASER INTERNATIONAL, INC., | ) | No. CV 07-00042-PHX-MHM |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| STINGER SYSTEMS, INC., | ) ) ) | |
| Defendant. | ) ) | |
| ‎ | ) ) | |

Currently pending before this Court is Defendant Stinger Systems, Inc.'s Motion for Reconsideration. (Dkt. #220). Having reviewed the Parties' briefs and determined that oral argument is unnecessary, the Court issues the following Order.

I.    BACKGROUND

On January 5, 2007, TASER filed an action against Stinger alleging infringement of U.S. Patent 7,145,762 (filed Feb. 11, 2003) ("the '762 patent") under 35 U.S.C. § 271, false advertising under 15 U.S.C. § 1051 *et seq.*, and false marketing under 35 U.S.C. § 292. (Dkt. #1). TASER amended its complaint on July 9, 2007 to add infringement claims for two additional patents, U.S. Patent 6,999,295 (filed Feb. 5, 2005) ("the '295 patent") and U.S. Patent 7,102,870 (filed May 29, 2003) ("the '870 patent"). (Dkt. #32). Thereafter, on October 10, 2007, TASER filed a second amended complaint in which TASER dropped all claims related to the '762 patent and added claims pertaining to a fourth patent, U.S. Patent 7,234,262 (Dec. 2, 2005) ("the '262 patent").

On May 7, 2008, the Court held a hearing in accordance with Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996), to construe disputed claims of the '262, '295, and '870 patents. This Court issued its Markman Order construing the disputed claims on February 2, 2009. (Dkt. #146). On, May 18, 2009, Stinger filed a Motion for Summary judgment of Patent Invalidity or Noninfringement. (Dkt. #160). On August 14, 2009 TASER filed its Motion for Partial Summary Judgment of Literal Infringement. (Dkt. #184). The Court held oral argument concerning these motions on March 23, 2010. (Dkt. #210).

The Court issued its summary judgment Order on March 31, 2010. The Court granted in part and denied in part Stinger's Motion for Summary Judgment, granting the motion as to claim 3 of the '870 patent, finding it invalid as obvious. (Id.). In the same Order, the Court granted TASER's Motion for Partial Summary Judgment, finding that Stinger's S-200 Electronic Control Device ("ECD") literally infringed claims 2 and 40 of TASER's '295 patent. (Id.). On April 14, 2010, Stinger filed a Motion for Extension of Time to File Motion for Reconsideration, (Dkt. #212), which this Court granted on April 15, 2010. (Dkt. #215). In its April 15 Order, the Court directed TASER to file a response brief to any reconsideration motion filed by Stinger. (Id.). On April 28, 2010, Stinger filed the instant Motion for Reconsideration. (Dkt. #220). TASER filed its response on May 10, 2010. (Dkt. #221).

II.    LEGAL STANDARD

A district court may alter or amend its decision pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. However, "[t]he granting of a motion for reconsideration is 'an extraordinary remedy which should be used sparingly.'" Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (quoting 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2810.1 (2d ed. 1995)). Relief under Rule 59(e) is appropriate only if: (1) "the motion is 'necessary to correct manifest errors of law or fact upon which the judgment is based'; (2) the moving party presents 'newly discovered or previously unavailable evidence'; (3) the motion is necessary to 'prevent manifest injustice'; (4) there is an 'intervening change in controlling law.'" Turner v. Burlington Northern Santa

Fe R. Co., 228 F.3d 1058, 1063 (9th Cir. 2003) (quoting McDowell v. Calderon, 197 F.3d

1253, 1254 n.1 (9th Cir. 1999)). "Rule 59(e) . . . 'may not be used to relitigate old matters,

or to raise arguments or present evidence that could have been raised prior to the entry of

judgment.'" Exxon Shipping Co. v. Baker, 128 S.Ct. 2605, 2617 n.5 (2008) (quoting 11

WRIGHT & MILLER, supra, at 127-128); see Carroll v. Nakatani, 342 F.3d 934, 945 (9th Cir.

2003) ("A Rule 59(e) motion may not be used to raise arguments or present evidence for the

first time when they could reasonably have been raised earlier in the litigation."); see also

LRCiv 7.2(g) ("Any . . . motion [for reconsideration] shall point out with specificity . . . any

new matters being brought to the Court's attention for the first time and the reasons they

were not presented earlier . . . .").

The prohibition against raising new arguments that could have been raised earlier

applies equally to patent cases. See, e.g., Transonic Sys., Inc. v. Non-Invasive Med. Techs.

Corp., 75 Fed. Appx. 765, 783-84 (Fed. Cir. 2003) (affirming denial of reconsideration of

summary judgment of invalidity and claim construction based on new arguments and

evidence); Minton v. Nat'l Ass'n of Sec. Dealers, Inc., 336 F.3d 1373, 1379-80 (Fed. Cir.

2003) (affirming denial of reconsideration of summary judgment on patent validity where

district court "declin[ed] to entertain [movant's] new argument," finding movant's "shifting

tactics" prejudiced nonmoving party); Senza-Gel Corp. v. Seiffhart, 803 F.2d 661, 663-64,

668 (Fed. Cir. 1986) ("[A] motion for reconsideration is not a chance for a second bite, and

. . . a grant of such a motion not based on newly found, previously unknown facts, would

enable the movant to 'sandbag' an adversary.").

III.    DISCUSSION

In its Motion for Reconsideration, Stinger argues that "The Summary Judgment Order

was based upon the legally erroneous holding: 'The '295 patent, however, teaches a system

whereby the ionization of the air gap triggers the circuit to generate the lower voltage.'"

Stinger's accusation of error is based on its contention that this Court improperly constructed

claims 2 and 40 of the '295 patent.  Claim 2 teaches:

a power supply for operating in a first mode to generate a first high voltage,

short duration output across the first and second electrodes *during a first time interval* to ionize the air within the air gap to thereby reduce the high impedance across the air gap to a lower impedance to enable current flow across the air gap at a lower voltage level and for subsequently operating in a second mode to generate a second lower voltage output across the first and second electrodes *during a second time interval* to maintain the current flow across the first and second electrodes and between the first and second contact points on the target to enable the current flow through the target to cause involuntary muscle contractions to thereby immobilize the target.

(emphasis added).  Relatedly, claim 4 recites:

> A method for immobilizing the muscles of a target, comprising the steps of:
> a. providing first and second electrodes positionable to establish first and second spaced apart contact points on the target wherein a high impedance air gap may exist between at least one of the electrodes and the target;
> b. applying a first high voltage, short duration output across the first and second electrodes during a *first time interval* to ionize the air within the air gap to thereby reduce the high impedance across the air gap to a lower impedance to enable current to flow across the air gap at a lower voltage level; and
> c. subsequently applying a second lower voltage output across the first and second electrodes during a *second time interval* to maintain the current flow across the first and second electrodes and between the first and second contact points on the target to enable the current flow through the target to cause involuntary muscle contractions to thereby immobilize the target.

(emphasis added).   The meaning of the phrases "first time interval" and "second time interval" were not disputed by the Parties during the <u>Markman</u> phased of this action.   Now, however, Stinger seizes on these two phrases to contest the Court's summary judgment Order, arguing they should have been constructed to mean that the circuit discussed in '295 is time-based and, as a result, the drop in voltage from the first to the second mode of operation is due to the passage of time and not the level impedance in an air-gap.  From this proposition, Stinger goes on to argue that the S-200 does not infringe claims 2 and 40 of the '295 patent because its drop in voltage is controlled entirely by the level of impedance in the air gap, not pre-timed intervals.

Whatever merit this new argument might have[1], it is too late for this Court to give it

---

[1]The Court notes that Stinger's current argument is premised on a faulty assumption; that there is only one plausible construction of the phrases "first time interval" and "second time interval."   TASER's responsive briefing in this action, and its arguments against

consideration. During the summary-judgment phase of this action, Stinger attacked claims 2 and 40 as invalid under a completely different legal theory than is currently advanced. In Stinger's Motion for Summary Judgment, it argued that claims 2 and 40 were invalid because they patented a mere law of nature, namely Ohm's law, which teaches that voltage naturally decreases as impedance decreases. In other words, Stinger asserted that the voltage drop from the first to the second mode of operation was caused naturally by the reduction of impedance in the air gap, not by internal circuit operation. Likewise, Stinger primarily defended against TASER's Motion for Partial Summary Judgment by repeating the same argument.[2] In short, until now, Stinger has advanced an "impedance-based" reading of claims 2 and 40, arguing the voltage differential between modes one and two was caused merely by a decrease in impedance in an air gap, not internal circuitry. In the instant motion, however, Stinger reverses course, seemingly acknowledging that the drop in voltage output between modes one and two of the ECD taught in claims 2 and 40 is not caused merely by a law of nature and is unrelated to impedance. Instead, Stinger argues that the voltage drop is solely the product of circuit operation, asserting that claims 2 and 40 teach two modes of circuit operation each set to output a precise level of voltage for a precise time interval regardless of external circumstances, i.e. impedance in an air gap.

Given its new "time-based" reading of claims 2 and 40, Stinger now emphasizes the meaning of "first time interval" and "second time interval," two phrases it previously did not deem important enough to dispute during the claim construction phase or even mention in defending against TASER's partial summary judgment motion. That these phrases were not mentioned is understandable, however, as doing so would have contradicted Stinger's

---

Stinger's proposed construction, demonstrate that the plain meaning of these phrases is far from settled. Additionally, even if Stinger's proposed limitation was adopted, TASER still maintains the S-200 infringes claims 2 and 40 of the '295 patent.

[2]Indeed, in its summary judgment Order, this Court noted that Stinger's response to TASER's Motion for Partial Summary Judgment was devoted almost entirely to repeating the invalidity arguments Stinger made in its own Motion for Summary Judgment.

"impedance-based" theory of claims 2 and 40, forcing it to admit that the drop in voltage output from mode one to mode two was not merely the product of a law of nature, but instead the result of a distinct manner of circuit operation. As this Court already noted, "[a] Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." Carroll, 342 F.3d at 945. The Court finds that Stinger could have asserted its time-based reading of claims 2 and 40 earlier, but chose not to, electing instead to rely on its "impedance-based" theory. Accordingly, Stinger's about face is not predicated on the discovery of new evidence or other information which was not previously available. Instead, it appears to this Court that Stinger has hired a new attorney whom has constructed a new theory of this case and now seeks to undo or alter portions of this action which proceeded under the previous theory. Granting the instant motion, then, would be akin to allowing Stinger an impermissible second bite at the apple. See Senza-Gel Corp.,, 803 F.2d at 664 (Fed. Cir. 1986) ("[A] motion for reconsideration is not a chance for a second bite, and . . . a grant of such a motion not based on newly found, previously unknown facts, would enable the movant to 'sandbag' an adversary.").

**Accordingly,**

**IT IS HEREBY ORDERED** denying Stinger's Motion for Reconsideration. (Dkt. #220).

DATED this 2nd day of June, 2010.

_____
Mary H. Murguia
United States District Judge

- 6 -