Chad S. Campbell, Bar No. 012080
CSCampbell@perkinscoie.com
Aaron Matz, Bar No. 024108
AMatz@perkinscoie.com
PERKINS COIE BROWN & BAIN P.A.
2901 North Central Avenue, Suite 2000
Phoenix, AZ  85012-2788
Telephone:  602.351.8000
Facsimile:  602.648.7000

Holly L. Gibeaut, Bar No. 019786
hgibeaut@taser.com
TASER International, Inc.
17800 North 85th Street
Scottsdale, AZ  85255-9603
Telephone:  480.502.6265
Facsimile:  480.991.0791

Attorneys for Plaintiff
TASER International, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| TASER International, Inc., | No. CV07-0042-PHX-MHM |
| Plaintiff, | |
| v. | **TASER'S TRIAL BRIEF ON CONTESTED ISSUES OF LAW** |
| Stinger Systems, Inc., | |
| Defendant. | |

Pursuant to Section D.2 of the Court's Proposed Final Pretrial Order for Jury Trial, TASER submits this short trial brief on the contested issues of law in this case.  This trial brief is being filed contemporaneously with the parties' Joint Proposed Final Pretrial Order.

I.      CONTESTED ISSUE OF LAW NO. 1.

        **Whether TASER is entitled to a permanent injunction barring Stinger from making, using, selling, or offering to sell the S-200 ECD (and products that are only colorably different from the S-200 ECD) for the lives of the patents-in-suit.**

        Under 35 U.S.C. § 283, "[t]he several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." "[T]he Patent Act also declares that 'patents shall have the attributes of personal property,' § 261, including 'the right to exclude others from making, using, offering for sale, or selling the invention,' § 154(a)(1)." *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of district courts, and . . . such discretion must be exercised consistent with traditional principles of equity . . . ." *Id.* at 394 (2006).

        "According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *Id.* at 391. Specifically, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.*

        "Courts awarding permanent injunctions typically do so under circumstances where plaintiff practices its invention and is a direct market competitor." *TruePosition, Inc. v. Andrew Corp.*, 568 F.Supp. 2d 500, 531 (D. Del. 2008) (citing *Muniauction, Inc. v. Thomson Corp.*, 502 F. Supp. 2d 477, 482 (W.D. Pa. 2007) ("Plaintiff and defendants are direct competitors in a two-supplier market.  If plaintiff cannot prevent its only competitor's continued infringement of its patent, the patent is of little value."); *Johns Hopkins Univ. v. Datascope Corp.*, 513 F. Supp. 2d 578, 586 (D. Md. 2007) (granting

permanent injunction where infringing product was plaintiffs' "only competition" and "thus, its sale reduce[d] the [p]laintiffs' market share"); *Transocean Offshore Deepwater Drilling, Inc. v. GlobalSantaFe Corp.*, No. Civ. A. 03-2910, 2006 WL 3813778, at *4 (S.D. Texas Dec. 27, 2006) (granting permanent injunction requiring structural modifications to infringing deepwater drilling rigs where "the customer base for deep water drill rigs is small, and [defendant] has not only used [its] rigs equipped with the infringing structure to compete for the same customers and contracts as [plaintiff], but also to win contracts over competing bids from [plaintiff]"); *see also Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, No. 04 C 5312, 2008 WL 4531371, at *2-3 (N.D. Ill. May 22, 2008) (granting permanent injunction where "continuing existence of [defendant's] infringing products in the same marketplace as [plaintiff's] products pose[d] a risk of irreparable harm to [plaintiff]", and plaintiff's "right to exclude is not compensated by monetary damages"); *Martek Biosciences Corp. v. Nutrinova Inc.*, 520 F. Supp. 2d 537, 558-59 (D. Del. 2007) (granting permanent injunction where plaintiff was a direct competitor "likely to lose market share that it may not be able to recapture," as plaintiff's patented technology was its primary revenue source, and defendant was plaintiff's only competitor and was "targeting [plaintiff's] customers in that industry"); *Novozymes A/S v. Genencor Int'l, Inc.*, 474 F. Supp. 2d 592 613 (D. Del. 2007) (granting permanent injunction where parties were "head-to-head competitors, and [plaintiff] has a right, granted by Congress, not to assist its rival with the use of proprietary technology"); *Visto Corp. v. Seven Networks, Inc.*, No. 2:03-CV-333-TJW, 2006 WL 3741891, at *4 (E.D. Texas Dec. 19, 2006) (granting permanent injunction; "Intellectual property enjoys its highest value when it is asserted against a direct competitor in the plaintiff's market.").

Even if the jury awards significant damages for past infringement, a permanent injunction may be warranted because such damages would be inadequate to compensate for future infringement. *See Trading Techs. Int'l,* 2008 WL 4531371, at *3 ("[P]laintiff's right to exclude is not compensated by monetary damages"); *Commonwealth Scientific & Indus. Research Org. v. Buffalo Tech. Inc.*, 492 F. Supp. 2d. 600, 605 (E.D. Texas 2007)

("The violation of a patent owner's right to exclude can present a situation where monetary damages cannot adequately compensate the patent holder for that injury. For example, when an infringer saturates the market for a patent invention with an infringing product or damages the patent holder's good will or brand name recognition by selling infringing products, that infringer violates the patent holder's exclusionary right in a manner that cannot be compensated through monetary damages."); *Visto Corp.*, 2006 WL 3741891, at *4 ("Although future damages may compensate [plaintiff] for an *approximate* loss, that does not make them adequate in the sense that they are a suitable proxy for injunctive relief.").

## II.    CONTESTED ISSUE OF LAW NO. 2.

**Whether Stinger has proved by clear and convincing evidence that any asserted claim of the patents-in-suit is obvious under 35 U.S.C. § 103.**

Under 35 U.S.C. § 282:

> A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim. . . . The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.

"A party seeking to establish that particular claims are invalid must overcome the presumption of validity in 35 U.S.C. § 282 by clear and convincing evidence." *Nystrom v. TREX Co.*, 424 F.3d 1136, 1149 (Fed. Cir. 2005) (quotation marks omitted) (quoting *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1067 (Fed. Cir. 2003)). "[T]he burden of persuasion is and remains always upon the party asserting invalidity." *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1358 (Fed. Cir. 1984) (quotation marks omitted) (quoting *Solder Removal Co. v. U.S. Int'l Trade Comm'n.*, 582 F.2d 628, 632-33 (C.C.P.A. 1978)). "The presumption is *never* annihilated, destroyed, or

even weakened, regardless of what facts are of record." *ACS Hosp. Sys., Inc. v. Montefiore Hosp.*, 732 F.2d 1572, 1574-75 (Fed. Cir. 1984).  Where the prior art relied on at trial was considered by the Patent Office, the party asserting invalidity "has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents." *Am. Hoist & Derrick Co.*, 725 F.2d at 1359.

Under 35 U.S.C. § 103(a):

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

A party seeking to invalidate a claim as obvious under Section 103 "must demonstrate [it] by clear and convincing evidence." *Procter & Gamble Co. v. Teva Pharm. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009); *see also McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1349 (Fed. Cir. 2001) ("Throughout the obviousness determination, a patent retains its statutory presumption of validity, *see* 35 U.S.C. § 282, and the movant retains the burden to show the invalidity of the claims by clear and convincing evidence as to underlying facts." (quotation marks omitted) (quoting *Rockwell Int'l. Corp. v. United States*, 147 F.3d 1358, 1364 (Fed. Cir. 1998))).

Obviousness under Section 103 "is ultimately a legal question, based on underlying factual determinations." *Eisai Co. v. Dr. Reddy's Labs., Ltd.*, 533 F.3d 1353, 1356 (Fed. Cir. 2008).  Those factual determinations "include 1) the scope and content of the prior art, 2) the level of ordinary skill in the art, 3) the differences between the claimed invention and the prior art, and 4) evidence of secondary factors, also known as objective indicia of non-obviousness." *Id.* (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *see KSR Int'l, Inc. v. Teleflex Inc.* 550 U.S. 398, 406 (2007) ("[The *Graham*]

1   factors continue to define the inquiry that controls.").  Federal Circuit "precedent clearly

2   establishes that the district court must make *Graham* findings before invalidating a patent

3   for obviousness." *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 663 (Fed. Cir. 2000).

4          "35 U.S.C. § 103 requires that obviousness be determined with respect to the

5   invention as a whole." *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1143 (Fed.

6   Cir. 1985).  That is essential "because inventions in most, in not all, instances rely upon

7   building blocks long since uncovered, and claimed discoveries almost of necessity will be

8   combinations of what, in some sense, is already known." *KSR*, 550 U.S. at 418-19.  Thus,

9   "a patent composed of several elements is not proved obvious merely by demonstrating

10  that each of its elements was, independently, known in the prior art." *Id.* at 418; *see also*

11  *In re Kotzab*, 217 F.3d 1365, 1369-70 (Fed. Cir. 2000) ("[E]very element of a claimed

12  invention may often be found in the prior art.  However, identification in the prior art of

13  each individual part claimed is insufficient to defeat patentability of the whole claimed

14  invention."  (citing *In re Rouffet*, 149 F.3d at 1357)).

15         "A critical step in analyzing the patentability of claims pursuant to section 103(a) is

16  casting the mind back to the time of the invention, to consider the thinking of one of

17  ordinary skill in the art, guided only by the prior art references and the then-accepted

18  wisdom in the field." *In re Kotzab*, 217 F.3d at 1369.  Thus "[t]he decision of

19  obviousness *vel non* is made not from the viewpoint of the inventor, but from the

20  viewpoint of a person of ordinary skill in the field of the invention." *Arkie Lures, Inc. v.*

21  *Gene Larew Tackle, Inc.*, 119 F.3d 953, 956 (Fed. Cir. 1997). "The purpose is to assure an

22  appropriate perspective of the decisionmaker, and to focus on conditions as they existed

23  when the invention was made." *Id.*

24         "The invention must be viewed not with the blueprint drawn by the inventor, but in

25  the state of the art that existed at the time." *Interconnect Planning*, 774 F.2d at 1138.

26  Thus, the pertinent obviousness inquiry takes place at the time of the invention. *In re*

27  *Dembiczak*, 175 F.3d 994, 999 (Fed. Cir. 1999).  That requires "casting the mind back to

28  the time of invention, to consider the thinking of one of ordinary skill in the art, guided

1   only by the prior art references and the then-accepted wisdom in the field." *Id.* (citations
2   omitted).  The finder of fact should "resist the temptation to read into the prior art the
3   teachings of the invention in issue." *Graham*, 383 U.S. at 36; *see KSR*, 550 U.S. at 421
4   ("A factfinder should be aware, of course, of the distortion caused by hindsight bias and
5   must be cautious of arguments reliant upon *ex post* reasoning.").

6          Prior to *KSR*, the Federal Circuit and its predecessor courts had developed the so-
7   called "TSM" test which requires "demonstrating a teaching, suggestion, or motivation to
8   combine known elements in order to show that the combination is obvious."  *See, e.g.*,
9   *Pro-Mold & Tool Co., Inc. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1573 (Fed. Cir.
10  1996) ("It is well-established that before a conclusion of obviousness may be made based
11  on a combination of references, there must have been a reason, suggestion, or motivation
12  to lead an inventor to combine those references.").  In *KSR*, the Supreme Court held that
13  the TSM test should not be applied rigidly but also noted that "it can be important to
14  identify a reason that would have prompted a person of ordinary skill in the relevant field
15  to combine the elements in the way the claimed new invention does" and that "[t]here is
16  no necessary inconsistency between the idea underlying the TSM test and the *Graham*
17  analysis."  550 U.S. at 418-19; *see Proctor & Gamble*, 566 F.3d at 994 ("[*KSR*] explained
18  that the Federal Circuit's 'teaching, suggestion or motivation' test provides helpful insight
19  into the obviousness question as long as it is not applied rigidly.").

20         References that "teach away" from the claimed invention "cannot serve to create a
21  prima facie case of obviousness."  *McGinley*, 262 F.3d at 1354-55.  "A reference may be
22  said to teach away when a person or ordinary skill, upon reading the reference, would be
23  discouraged from following the path set out in the reference, or would be led in a direction
24  divergent from the path that was taken by the applicant . . . [or] if it suggests that the line
25  of development flowing from the reference's disclosure is unlikely to be productive of the
26  result sought by the applicant."  *Tec Air, Inc. v. Denso Mfg. Mich. Inc.*, 192 F.3d 1353,
27  1359-60 (Fed. Cir. 1999) (quotation marks omitted) (quoting *In re Gurley*, 27 F.3d 551,
28  553 (Fed. Cir. 1994)).

No. CV07-0042-PHX-MHM

1    "As we have repeatedly emphasized, evidence relating to secondary considerations

2    'constitutes independent evidence of nonobviousness' and can be quite instructive in the

3    obviousness inquiry."  *Sud-Chemie, Inc. v. Multisorb Techs., Inc.*, 554 F.3d 1001, 1008

4    (Fed. Cir. 2009).  "The . . . 'secondary considerations' provide evidence of how the

5    patented device is viewed by the interested public: not the inventor, but persons concerned

6    with the product in the objective arena of the marketplace."  *Arkie Lures, Inc.*, 119 F.3d at

7    957.  "When present, such factors 'may often be the most probative and cogent evidence

8    [of non-obviousness] in the record.'"  *Procter & Gamble*, 566 F.3d at 998; *see also WMS*

9    *Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1359 (Fed. Cir. 1999)   ("The

10   consideration of the objective evidence [of secondary considerations] presented by the

11   patentee is a necessary part of the obviousness determination.")  Such secondary factors

12   may include the commercial success of the invention, copying by others, and satisfaction

13   of a long felt but unmet need.  *Sud-Chemie*, 554 F.3d at 1008; *see Graham*, 383 U.S. at

14   17-18 ("Such secondary considerations as commercial success, long felt but unresolved

15   needs, failure of others, etc., might be utilized to give light to the circumstances

16   surrounding the origin of the subject matter sought to be patented."); *see also TecAir*, 192

17   F.3d at 1361 (sales figures alone are evidence of commercial success sufficient to rebut

18   prima facie obviousness).

19

20   **III.    CONTESTED ISSUE OF LAW NO. 3.**

21        **Whether Stinger has proved by clear and convincing evidence that any of the**

22   **patents-in-suit is unenforceable.**

23

24        "Patent applicants and those substantively involved in the preparation or

25   prosecution of a patent application owe a 'duty of candor and good faith' to the PTO," and

26   a breach of this duty may render the issued patent unenforceable for inequitable conduct.

27   *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.*, 439 F.3d 1335, 1339 (Fed. Cir.

28   2006).  To prove that a patent is unenforceable due to inequitable conduct, the alleged

infringer "must provide clear and convincing evidence of (1) affirmative misrepresentations of material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Alza Corp. v. Mylan Lab., Inc.*, 391 F.3d 1365, 1373 (Fed. Cir. 2004). "It was to mitigate the 'plague' whereby every patentee's imperfections were promoted to 'inequitable conduct' that [the Federal Circuit] reaffirmed that both materiality and culpable intent must be established." *Allied Colloids, Inc. v. Am. Cyanamid Co.*, 64 F.3d 1570, 1578 (Fed. Cir. 1995); *see Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988) ("[T]he habit of charging inequitable conduct in almost every major patent case has become an absolute plague.") Both elements be established by clear and convincing evidence. *M. Eagles Tool Warehouse*, 439 F.3d at 1340. That elevated burden of proof is "strictly" enforced. *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008) (strict enforcement "because the penalty for inequitable conduct is so severe, the loss of the entire patent even where every claim clearly meets every requirement of patentability.").

Prior art is "material" only if a reasonable examiner would consider it important in deciding whether to allow the patent's claims to issue. *Rothman v. Target Corp.*, 556 F.3d 1310, 1323 (Fed. Cir. 2009); *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995). Information cannot be material for purposes of inequitable conduct if it is "cumulative to information already of record or being made of record." 37 C.F.R. § 1.56; *see Larson Mfg. Co. of S.D., Inc. v. Aluminart Prods. Ltd.*, 559 F.3d 1317, 1327 (Fed. Cir. 2009) (prior art is not material "if it is merely cumulative to, or less relevant than, information already considered by the examiner"); *Rothman*, 556 F.3d at 1326 (reversing jury verdict because undisclosed prior art was cumulative); *Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1319 (Fed. Cir. 2006) ("[A] withheld otherwise material prior art reference is *not* material for the purposes of inequitable conduct if it is merely cumulative to that information considered by the examiner."). Conduct during the prosecution of one patent application is not necessarily material to the prosecution of

related applications, and thus inequitable conduct with respect to one application does not automatically affect related applications. *See Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1332 (Fed. Cir. 1998) (holding that inequitable conduct associated with parent application did not taint claims of divisional of continuation application, which were directed to a different invention).

"Materiality and intent are different requirements, and absent a finding of deceptive intent, no amount of materiality gives the district court discretion to find inequitable conduct." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 560 F.3d 1366, 1380 (Fed. Cir. 2009); *see Larson Mfg.*, 559 F.3d at 1340 ("[M]ateriality does not presume intent, and nondisclosure, by itself, cannot satisfy the deceptive intent element."). The accused infringer must prove by clear and convincing evidence that the allegedly material information was "withheld with the specific intent to deceive the PTO." *Star Scientific*, 537 F.3d at 1366. Where the alleged breach of the duty of candor involves a nondisclosure of material information, "clear and convincing evidence must show that the applicant *made a deliberate decision* to withhold a *known* material reference." *Id.* (quoting *Molins*, 48 F.3d at 1181); *see Larson Mfg.*, 559 F.3d at 1340-41 ("[M]erely withholding a reference cannot support an inference of deceptive intent.") Moreover, "an accused infringer cannot carry its threshold burden simply by pointing to the absence of a credible good faith explanation" for the alleged nondisclosure. *Larson Mfg.*, 559 F.3d at 1341; *see Star Scientific*, 537 F.3d at 1368 ("[Accused infringer] cannot carry its burden [of establishing intent to deceive] simply because [patentee] failed to provide a credible alternative explanation."); *M. Eagles Tool Warehouse*, 439 F.3d at 1341 ("[A] lack of a good faith explanation for the nondisclosure, cannot constitute clear and convincing evidence sufficient to support a determination of culpable intent.").

The duty of candor owed to the PTO extends only to (i) the inventor, (ii) the prosecuting attorney or agent and (iii) anyone who is substantively involved in the application. 37 C.F.R. § 1.56; *Molins PLC*, 48 F.3d at 1178 n.6. An assignee's knowledge of allegedly material prior art is insufficient; such knowledge must be possessed by a

human being in one of the three listed categories.  *B.F. Goodrich Co. v. Aircraft Braking Sys. Corp.*, 72 F.3d 1577, 1585 (Fed. Cir. 1996) (no inequitable conduct absent evidence that inventor or the prosecuting patent attorney knew about prior art paper in files of assignee's other employees).

If the accused infringer succeeds in proving "threshold levels" of both materiality and intent, each by clear and convincing evidence, the trial court then balances materiality and intent to determine whether to render the patent unenforceable for inequitable conduct.  *Eli Lilly & Co. v. Zenith Goldline Pharm., Inc.*, 471 F.3d 1369, 1381 (Fed. Cir. 2006).

**IV.    CONTESTED ISSUE OF LAW NO. 4.**

**Whether this is an exceptional case under 35 U.S.C. § 285, such that TASER is entitled to attorney fees.**

Under 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  "Determining whether a case is exceptional and whether attorney fees should be granted under 35 U.S.C. § 285 is a two-step process." *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 964 (Fed. Cir. 2000) (quotation marks omitted) (quoting *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1370 (Fed. Cir. 1999)).  The first step is a factual determination of whether the case is exceptional.  *Id.*  "[I]f the case is found to be exceptional, the court must then determine whether attorney fees should be awarded . . . ."  *Id.*

The types of conduct that can form a basis for finding a case exceptional include willful infringement, misconduct during litigation, and vexation litigation.  *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989).  Such conduct must be supported by clear and convincing evidence.  *Id.*  "Willfulness of infringement relates to the accused infringer's conduct in the marketplace."  *Kloster Speedsteel AB v. Crucible Inc.*, 793 F.2d 1565, 1580 (Fed. Cir. 1986), *overruled on other*

1   *grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d
2   1337 (Fed Cir. 2004).  "Because that conduct may be seen as producing an unnecessary
3   and outcome-certain law suit, it may make the case so exceptional as to warrant attorney
4   fees under § 285."  *Id.*  "Similarly, bad-faith displayed in pretrial and trial stages, by
5   counsel or party, may render the case exceptional under § 285."  *Id.*

7   **V.    CONTESTED ISSUE OF LAW NO. 5.**
8         **Whether this is an exceptional case under 35 U.S.C. § 285, such that Stinger is**
9   **entitled to attorney fees.**

11        As noted above, under 35 U.S.C. § 285, "[t]he court in exceptional cases may
12  award reasonable attorney fees to the prevailing party."  Although attorney fees may be
13  available to a prevailing accused infringer in some cases, the Federal Circuit has "not
14  previously held any party liable for attorney fees for either vigorously prosecuting its
15  patent application of enforcing a presumptively valid patent, even where that patent was
16  later invalidated, in the absence of clear and convincing evidence of inequitable conduct
17  or misconduct during litigation."  *McNeil-PPC, Inc. v. L. Perrigo Co.*, 337 F.3d 1362,
18  1372 (Fed. Cir. 2003) (reversing district court award of attorney fees to prevailing
19  defendant).

21  **VI.   CONTESTED ISSUE OF LAW NO. 6.**
22        **Whether TASER is entitled to enhanced damages under 35 U.S.C. § 284, and**
23  **the amount of such damages.**

25        Under 35 U.S.C. § 284, "the court may increase the damages up to three times the
26  amount found or assessed."  The Court may award such enhanced damages on a finding of
27  willful infringement.  *In re Seagate Tech., LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007) (en
28  banc).  "A decision whether to enhance damages is committed to the discretion of the trial

1   judge and will not be disturbed absent a clear showing of abuse of discretion." *Amsted*
2   *Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 183-184 (Fed. Cir. 1994).  In
3   determining the amount of enhanced damages to award, the Court may consider factors
4   such as whether there was deliberate copying, whether the infringer knew of the patent
5   and had a good faith belief that it was invalid, the infringer's behavior as a party to the
6   litigation, the defendant's size and financial condition, and the closeness of the willfulness
7   issue.  *Id.* (citing *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992)).  "The
8   decision whether to increase damages 'provides an opportunity for the trial court to
9   balance equitable concerns as it determines whether and how to recompense the
10  successful litigant.'"  *Id.* (quoting *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781
11  F.2d 198, 201 (Fed. Cir. 1986)).

13  Dated:  July 9, 2010                    **PERKINS COIE BROWN & BAIN P.A.**

15                                          By:/s/ Chad S. Campbell
                                               Chad S. Campbell
16                                             Aaron Matz
                                               2901 North Central Avenue, Suite 2000
17                                             Phoenix, AZ  85012-2788

18                                             Holly L. Gibeaut
                                               TASER International, Inc.
19                                             17800 North 85th Street
                                               Scottsdale, AZ  85255-9603

20                                          Attorneys for Plaintiff TASER International, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 9, 2010, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Chad S. Campbell:        cscampbell@perkinscoie.com

Aaron Matz:               amatz@perkinscoie.com

Holly L. Gibeaut:        hgibeaut@taser.com

Attorneys for Plaintiff

　　　—and—

Stefan V. Stein:          stefan.stein@gray-robinson.com

Attorneys for Defendant


By /s/ Indy Fitzgerald　　　　　　　

LEGAL18674808.1