*TASER International, Inc. v. Stinger Systems, Inc.*
Case No. CV07-0042-PHX-MHM

**Index of Exhibits to**
**Declaration of Counsel In Support of TASER's Motion For Contempt And**
**Application For Order To Show Cause**

| Exhibit No. | Description |
|:---:|:---|
| 1 | An accurate copy of a Verified Return of Service, demonstrating that Robert F. Gruder was personally served with a copy of this Court's Final Injunction on September 28, 2010. |
| 2 | An accurate copy of an Affidavit of Service, demonstrating that Karbon Arms, Inc. was personally served with a copy of this Court's Final Injunction on September 28, 2010. |
| 3 | An accurate copy of an excerpt from the deposition of Thomas V. Saliga, taken in this action on August 27, 2008. |
| 4 | An accurate copy of the Petition Commencing Assignment for Benefit of Creditors, filed on July 20, 2010 with the Circuit Court of the Thirteenth Judicial Circuit for Hillsborough County Florida, Civil Division, obtained from the court file in that action. |
| 5 | An accurate copy of an Order of the Court in *TASER Int'l v. Stinger Sys. Inc, James F. McNulty and Robert Gruder*, No. 2:09-CV-00289-KJD-PAL (D. Nev.), Docket No. 150, filed October 7, 2010, and obtained from the court file in that action. |
| 6 | An accurate copy of an email from Robert F. ("Bob") Gruder to Stefan Stein and John Anthony, dated July 26, 2010, and other emails in the same email string, that was produced by Stinger Systems, Inc. ("Stinger") and Robert Gruder in *TASER Int'l v. Stinger Sys. Inc, James F. McNulty and Robert Gruder*, No. 2:09-CV-00289-KJD-PAL (D. Nev.). |
| 7 | An accurate copy of an email from Bob Gruder to P. Sterling Kerr, dated July 7, 2010, that was produced by Stinger and Robert Gruder in *TASER Int'l v. Stinger Sys. Inc, James F. McNulty and Robert Gruder*, No. 2:09-CV-00289-KJD-PAL (D. Nev.). |
| 8 | An accurate copy of an email from Shad Stastney to Bob Gruder, dated July 7, 2010, and other emails in the same email string, that was produced by Stinger and Robert Gruder in *TASER Int'l v. Stinger Sys. Inc, James F. McNulty and Robert Gruder*, No. 2:09-CV-00289-KJD-PAL (D. Nev.). |
| 9 | An accurate copy of an email from Bob Gruder to Matthew Pliskin, dated July 8, 2010, and other emails in the same email string, that was produced by Stinger and Robert Gruder in *TASER Int'l v. Stinger Sys. Inc, James F. McNulty and Robert Gruder*, No. 2:09-CV-00289-KJD-PAL (D. Nev.). |

*TASER International, Inc. v. Stinger Systems, Inc.*
Case No. CV07-0042-PHX-MHM

**Index of Exhibits to**
**Declaration of Counsel In Support of TASER's Motion For Contempt And**
**Application For Order To Show Cause**

| Exhibit No. | Description |
|:---:|:---|
| 10 | An accurate copy of an email from Bob Gruder to James McNulty, dated July 22, 2010, and other emails in the same email string, that was produced by Stinger and Robert Gruder in *TASER Int'l v. Stinger Sys. Inc, James F. McNulty and Robert Gruder*, No. 2:09-CV-00289-KJD-PAL (D. Nev.). |
| 11 | An accurate copy of the Certificate of Incorporation for Karbon Arms, Inc., filed August 2, 2010 and obtained from the files of the State of Delaware, Secretary of State, Division of Corporations. |
| 12 | An accurate copy of an email from Bob Gruder to Stefan V. Stein and John Anthony, dated August 11, 2010, and other emails in the same email string, that was produced by Stinger and Robert Gruder in *TASER Int'l v. Stinger Sys. Inc, James F. McNulty and Robert Gruder*, No. 2:09-CV-00289-KJD-PAL (D. Nev.). |
| 13 | An accurate copy of a Notice of and Motion to Authorize the Sale of Assets, to Establish Bidding and Sale Procedures, and Notice of Hearing on Any Timely Filed Objections, filed on August 13, 2010 in the matter *In re: Assignment for the Benefit of Creditors of Stinger Systems, Inc., Assignor, to Larry S. Hyman, Assignee*, Case No. 10-014854, then pending in the Circuit Court of the Thirteenth Judicial Circuit for Hillsborough County Florida, Civil Division. |
| 14 | An accurate copy of an email from Vann McCollough to Bob Gruder, dated August 18, 2010, and other emails in the same email string, that was produced by Stinger and Robert Gruder in *TASER Int'l v. Stinger Sys. Inc, James F. McNulty and Robert Gruder*, No. 2:09-CV-00289-KJD-PAL (D. Nev.). |
| 15 | An accurate copy of an email from Bob Gruder to James McNulty, dated August 23, 2010, and other emails in the same email string, that was produced by Stinger and Robert Gruder in *TASER Int'l v. Stinger Sys. Inc, James F. McNulty and Robert Gruder*, No. 2:09-CV-00289-KJD-PAL (D. Nev.). |
| 16 | An accurate copy of the decision of the United States Patent and Trademark Office regarding a reexamination of U.S. Patent No. 6,999,295, received by TASER International, Inc. on or about May 2, 2011. |
| 17 | An accurate copy of an Application by Foreign Corporation for Authorization to Transact Business in Florida, and related filings, filed September 14, 2010 with the Florida Division of Corporations and obtained from the files of that Division. |

*TASER International, Inc. v. Stinger Systems, Inc.*
Case No. CV07-0042-PHX-MHM

**Index of Exhibits to**
**Declaration of Counsel In Support of TASER's Motion For Contempt And**
**Application For Order To Show Cause**

| Exhibit No. | Description |
|:---:|:---|
| 18 | An accurate copy of a Amended Order on Notice of and Motion to Authorize the Sale of Assets, to Establish Bidding and Sale Procedures, and Notice of Hearing on Any Timely Filed Objections, filed on or about September 15, 2010 in the matter *In re: Assignment for the Benefit of Creditors of Stinger Systems, Inc., Assignor, to Larry S. Hyman, Assignee*, Case No. 10-014854, then pending in the Circuit Court of the Thirteenth Judicial Circuit for Hillsborough County Florida, Civil Division. |
| 19 | Accurate copies of a State of Delaware Certificate of Conversion from a Corporation to a Limited Liability Company converting Karbon Arms, Inc. to Karbon Arms, LLC, and a State of Delaware Limited Liability Company Certificate of Formation for Karbon Arms, LLC, both filed February 23, 2011, and both obtained from the files of the State of Delaware, Secretary of State, Division of Corporations. |
| 20 | An accurate copy of an email from George DiScioscia to Jerry Kovar, dated September 28, 2010. |
| 21 | An accurate copy of an excerpt from the deposition of Robert Gruder, taken in this action on August 26, 2008. |
| 22 | Photographs taken of the Stinger S-200 and Karbon MPID devices that accurately depict the devices. |
| 23 | Photographs taken of certain printed wiring boards obtained from a Karbon MPID, serial no. S7033, when it was partially disassembled.  The photographs accurately depict those printed wiring boards and the electronic components attached to those printed wiring boards. |
| 24 | An accurate copy of an email from George DiScioscia to Allen L. Edington, dated February 25, 2011. |
| 25 | An accurate copy of a page from the Karbon Arms website, http://www.karbonarms.com, obtained on May 27, 2011. |
| 26 | An accurate copy of U.S. Patent No. 7,778,005 (Aug. 17, 2010). |
| 27 | An accurate copy of the *Basic Operator Certification Program Student Manual* for the Stinger Systems S-200, bearing Bates Nos. STINGER000805-58. |
| 28 | An accurate copy of the *Owners Manual & Operating Instructions* for the Stinger Systems S-200, bearing Bates Nos. STINGER000025-38. |
| 29 | An accurate copy of *Basic Operator Certification Program Student Manual* for the Karbon MPID. |

*TASER International, Inc. v. Stinger Systems, Inc.*
Case No. CV07-0042-PHX-MHM

**Index of Exhibits to**
**Declaration of Counsel In Support of TASER's Motion For Contempt And**
**Application For Order To Show Cause**

| Exhibit No. | Description |
|:---:|:---|
| 30 | An accurate copy of the *Owners Manual & Operating Instructions* for the Karbon MPID. |

57518-0006/LEGAL21254739.1

# Exhibit 11

State of Delaware
Secretary of State
Division of Corporations
Delivered 04:36 PM 08/02/2010
FILED 04:14 PM 08/02/2010
SRV 100793845 – 4855229 FILE

## CERTIFICATE OF INCORPORATION

FIRST:  The name of this corporation shall be: KARBON ARMS, INC.

SECOND:  Its registered office in the State of Delaware is to be located at 2711 Centerville Road, Suite 400, Wilmington, County of New Castle, Delaware, 19808. The name of its registered agent at such address is CorpAmerica, Inc.

THIRD:  The purpose or purposes of the corporation shall be:
> To engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of Delaware.

FOURTH:  The total number of shares of stock, which this corporation is authorized to issue, is One Thousand  (1,000) shares of common stock without par value.

FIFTH:  The name and address of the incorporator is as follows:
> CorpAmerica, Inc.
> 2711 Centerville Road
> Suite 400
> Wilmington, Delaware  19808

SIXTH:  The Board of Directors shall have the power to adopt, amend or repeal the by-laws.

SEVENTH:  No director shall be personally liable to the Corporation or its stockholders for monetary damages for any breach of fiduciary duty by such director as a director. Notwithstanding the foregoing sentence, a director shall be liable to the extent provided by applicable law, (i) for breach of the director's duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) pursuant to Section 174 of the Delaware General Corporation Law or (iv) for any transaction from which the director derived an improper personal benefit.  No amendment to or repeal of this Article Seventh shall apply to or have any effect on the  liability or alleged liability of any director of the Corporation for or with respect to any acts or omissions of such director occurring prior to such amendment.

IN  WITNESS  WHEREOF,  the  undersigned,  being  the  incorporator  herein  before named, has executed signed and acknowledged this certificate of incorporation this 2nd day of August, 2010.

> CorpAmerica, Inc., Incorporator

> By: /s/ Margaret Rosado
> Name:  Margaret Rosado
> Assistant Secretary

# Exhibit 12

**From:** Bob Gruder <bob@stingersystems.com>
**Sent:** 08/11/2010 08:20:45 am
**To:** Stefan V. Steve Stein <Stefan.Stein@gray-robinson.com>; Anthony John
<janthony@anthonyandpartners.com>; Cheryl Thompson <cthompson@anthonyandpartners.com>
**Cc:**
**Bcc:**
**Subject:** RE: Revised Final Injunction

---

They couldn't call Stinger's customer list because they didn't have it until we gift wrapped it for them in the ABC notice.

There will be no more bad press the ABC is already out there.

Settle it.

From: Stefan V. ""Steve"" Stein [mailto:Stefan.Stein@gray-robinson.com]
Sent: Wednesday, August 11, 2010 9:56 AM
To: Bob Gruder; Anthony John; Cheryl Thompson
Subject: RE: Revised Final Injunction

I'm surprised Taser didn't start contacting your customers months ago when they won the Summary Judgment motion. They can certainly do it now that Stinger is going out of business, and I suspect there will be more bad press to come in light of the ABC (and the permanent injunction if you settle). Do you want to settle or not?

Stefan V. ""Steve"" Stein

Intellectual Property

GrayRobinson, P.A.

201 North Franklin Street, Suite 2200

P.O. Box 3324 (33601-3324)

Tampa, Florida 33602

Main: 813-273-5000 | Fax: 813-273-5145

Direct: 813-273-5078 |

GRAY | ROBINSON [http://gray-robinson.com/]

ATTORNEYS AT LAW [http://www.gray-robinson.com/]

This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

Disclaimer under Circular 230: Any statements regarding tax matters made herein, including any attachments, are not formal tax opinions by this firm, cannot be relied upon or used by any person to avoid tax penalties, and are not intended to be used or referred to in any marketing or promotional materials.

---

From: Bob Gruder [mailto:BGruder@stingersystems.com]
Sent: Wednesday, August 11, 2010 9:44 AM
To: Stefan V. ""Steve"" Stein; Anthony John; Cheryl Thompson
Subject: RE: Revised Final Injunction

Where did this language come from? We received calls yesterday from departments that said Taser International called them directly and said they are using an infringing product. Taser offered them a $75 rebate to purchase Tasers. They are using the creditor list that was mailed out as a customer list and already threatening the departments. This language clearly indicates that Taser intends to pursue threats to departments.

From: Stefan V. Steve Stein [mailto:Stefan.Stein@gray-robinson.com]
Sent: Tuesday, August 10, 2010 8:13 PM
To: Bob Gruder; Anthony John; Cheryl Thompson
Subject: Fwd: Revised Final Injunction

This message is being sent from my iPhone. Please excuse the terse and cryptic nature of this message as well as any misspellings. Further, this message may have been dictated and automatically electronically transcribed without proofreading.

Begin forwarded message:

From: ""Campbell, Chad (Perkins Coie Brown & Bain)"" [CSCampbell@perkinscoie.com]
Date: August 10, 2010 7:31:19 PM EDT
To: ""Stefan V. \""Steve\"" Stein"" [Stefan.Stein@gray-robinson.com]
Cc: ""Matz, Aaron (Perkins Coie Brown & Bain)"" [amatz@perkinscoie.com]
Subject: RE: Revised Final Injunction

Steve, TASER is not willing to have the injunction in essence turn all infringing S-200s into licensed products. There are too many unknowns about Stinger's S-200 business and future plans for such an arrangement to work. Here is a proposed compromise on paragraph 4.

4. This Final Injunction does not require Stinger to attempt to recall S-200 ECD products from purchasers who bought such products prior to the entry of this Final Injunction (""Prior Purchasers""). This Final Injunction does not address what such Prior Purchasers may or may not do with S-200 ECD products purchased prior to the entry of this Final Injunction. Nor does this Final Injunction address or resolve any claims that TASER may have for infringement of the '295 patent based on any Prior Purchaser's continued use of S-200 ECD products purchased prior to the entry of this Final Injunction or any defenses that any such Prior Purchaser may have to such claims by TASER.

Stefan V. ""Steve"" Stein

Intellectual Property

GrayRobinson, P.A.

201 North Franklin Street, Suite 2200

P.O. Box 3324 (33601-3324)

Tampa, Florida 33602

Main: 813-273-5000 | Fax: 813-273-5145

Direct: 813-273-5078 |

GRAY | ROBINSON [http://gray-robinson.com/]

ATTORNEYS AT LAW [http://www.gray-robinson.com/]

This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

Disclaimer under Circular 230: Any statements regarding tax matters made herein, including any attachments, are not formal tax opinions by this firm, cannot be relied upon or used by any person to avoid tax penalties, and are not intended to be used or referred to in any marketing or promotional materials.

_____

From: Stefan V. ""Steve"" Stein [mailto:Stefan.Stein@gray-robinson.com]
Sent: Tuesday, August 10, 2010 12:29 PM
To: Campbell, Chad (Perkins Coie Brown & Bain)
Cc: Matz, Aaron (Perkins Coie Brown & Bain)
Subject: RE: Revised Final Injunction

What about the one's at the police department? There's a difference between a recall vs. allowing the police departments to continue to use their guns. With or without a recall, the PDs would be under the impression that they could no longer use their guns without violating the injunction. Hence, we need the extra language.

Stefan V. ""Steve"" Stein

Intellectual Property

GrayRobinson, P.A.

201 North Franklin Street, Suite 2200

P.O. Box 3324 (33601-3324)

Tampa, Florida 33602

Main: 813-273-5000 | Fax: 813-273-5145

Direct: 813-273-5078 |

GRAY | ROBINSON [http://gray-robinson.com/]

ATTORNEYS AT LAW [http://www.gray-robinson.com/]

This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

Disclaimer under Circular 230: Any statements regarding tax matters made herein, including any attachments, are not formal tax opinions by this firm, cannot be relied upon or used by any person to avoid tax penalties, and are not intended to be used or referred to in any marketing or promotional materials.

---

From: Campbell, Chad (Perkins Coie Brown & Bain) [mailto:CSCampbell@perkinscoie.com]
Sent: Tuesday, August 10, 2010 3:09 PM
To: Campbell, Chad (Perkins Coie Brown & Bain); Stefan V. ""Steve"" Stein
Cc: Matz, Aaron (Perkins Coie Brown & Bain)
Subject: RE: Revised Final Injunction

To be more specific, include the first sentence of paragraph 4, but not the second sentence:


4. This Final Injunction does not require Stinger to recall S-200 ECD products sold prior to the entry of

this Final Injunction.

---

From: Campbell, Chad (Perkins Coie Brown & Bain)
Sent: Tuesday, August 10, 2010 12:08 PM
To: 'Stefan V. ""Steve"" Stein'
Cc: Matz, Aaron (Perkins Coie Brown & Bain)
Subject: RE: Revised Final Injunction

Steve, the change to paragraph 4 is presenting a problem. Can we leave all mention of what the police departments can or cannot do out of the injunction? They are not parties to the case and are not before the court.

---

From: Stefan V. ""Steve"" Stein [mailto:Stefan.Stein@gray-robinson.com]
Sent: Tuesday, August 10, 2010 10:41 AM
To: Campbell, Chad (Perkins Coie Brown & Bain)
Cc: Matz, Aaron (Perkins Coie Brown & Bain)
Subject: RE: Revised Final Injunction

Please see my changes to Para 3 and 4. If those are ok, I think we are in agreement as to all of the other terms. Please circulate ""clean"" copies for Gruder's signature.

Stefan V. ""Steve"" Stein

Intellectual Property

GrayRobinson, P.A.

201 North Franklin Street, Suite 2200

P.O. Box 3324 (33601-3324)

Tampa, Florida 33602

Main: 813-273-5000 | Fax: 813-273-5145

Direct: 813-273-5078 |

GRAY | ROBINSON [http://gray-robinson.com/]

ATTORNEYS AT LAW [http://www.gray-robinson.com/]

This e-mail is intended only for the individual(s) or entity(s) named within the message. This e-mail might contain legally privileged and confidential information. If you properly received this e-mail as a client or retained expert, please hold it in confidence to protect the attorney-client or work product privileges. Should the intended recipient forward or disclose this message to another person or party, that action could constitute a waiver of the attorney-client privilege. If the reader of this message is not the intended recipient, or the agent responsible to deliver it to the intended recipient, you are hereby notified that any review, dissemination, distribution or copying of this communication is prohibited by the sender and to do so might constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. section 2510-2521. If this communication was received in error we apologize for the intrusion. Please notify us by reply e-mail and delete the original message without reading same. Nothing in this e-mail message shall, in and of itself, create an attorney-client relationship with the sender.

Disclaimer under Circular 230: Any statements regarding tax matters made herein, including any attachments, are not formal tax opinions by this firm, cannot be relied upon or used by any person to avoid tax penalties, and are not intended to be used or referred to in any marketing or promotional materials.

---

From: Campbell, Chad (Perkins Coie Brown & Bain) [mailto:CSCampbell@perkinscoie.com]
Sent: Monday, August 09, 2010 9:17 AM
To: Stefan V. ""Steve"" Stein
Cc: Matz, Aaron (Perkins Coie Brown & Bain)
Subject: Revised Final Injunction

Steve, the version I sent you on Friday had the wrong revision to paragraph 4. Please use the attached. I am happy to discuss the difference with you if it matters.


Chad


Chad S. Campbell | Perkins Coie Brown & Bain P.A.

2901 N. Central Avenue

Suite 2000

Phoenix, AZ 85012-2788

PHONE: 602.351.8393

FAX: 602.648.7193

E-MAIL: CCampbell@perkinscoie.com

_____

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with Treasury Department and IRS regulations, we inform you that, unless expressly indicated otherwise, any federal tax advice contained in this communication (including any attachments) is not intended or written by Perkins Coie LLP to be used, and cannot be used by the taxpayer, for the purpose of (i) avoiding penalties that may be imposed on the taxpayer under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein (or any attachments).

* * * * * * * * * *

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

# Exhibit 13

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

In re:

Assignment for the Benefit
of Creditors of:

STINGER SYSTEMS, INC.                              Case No. 10-014854

     Assignor,

                                     Division C

To

LARRY S. HYMAN,

     Assignee.

_____/

**NOTICE OF AND MOTION TO AUTHORIZE
THE SALE OF ASSETS; TO ESTABLISH BIDDING AND SALE
PROCEDURES; AND NOTICE OF HEARING ON ANY TIMELY FILED OBJECTIONS**

PLEASE TAKE NOTICE, all creditors and parties in interest have to and including **Wednesday, September 1, 2010** to object to the sale of the assets of the estate as contemplated by this Notice. You must file your objection to this Notice with Pat Frank, Clerk of the Court, Thirteenth Judicial Circuit, George E. Edgecomb Courthouse - 800 E. Twiggs Street, Tampa, FL 33602 and serve a copy by U.S. Mail and Facsimile Transmission on: (i) Larry S. Hyman, 106 So. Tampania Avenue, Suite 200, Tampa, Florida 33609, Fax No.813/837-4652; and (ii) and Elena Paras Ketchum, Esq., Stichter Riedel Blain & Prosser, 110 E. Madison Street, Suite 200, Tampa, Florida 33602, Fax No. 813/229-1811.

If you file and serve an objection within the time permitted, this Motion and the objection shall be heard before the Honorable James M. Barton, Circuit Judge, on **September 8, 2010, at 2:15 p.m.**, in Hearing Room 512, George E. Edgecomb Courthouse - 800 E. Twiggs Street, Tampa, FL 33602 (the "Objection Hearing").

If no objection is filed and served within the time permitted, the Objection Hearing will be cancelled and the Assignee, pursuant to Florida Statutes §727.111(4), is permitted to sell the assets of the estate as contemplated by this Notice after September 6, 2010 (the date which provides at least 20 days notice as required under Florida Statutes §727.111(4)). The Assignee may, in his discretion, submit an order to the Court approving this Notice, but is permitted, pursuant to Florida Statutes §727.111(4), to consummate the sale contemplated by this Notice without further order of the court.

1

LARRY S. HYMAN, as Assignee of the assets of Stinger Systems, Inc. (the "Assignor"), by and through his undersigned counsel, hereby provides notice to all parties in interest that he has received an offer to purchase and intends to sell the items of Assignor identified herein and that he hereby gives notice of certain sale procedures and moves the Court to resolve, if raised, any objections to the relief and notice sought herein (this "Sale Notice").  In support of this Sale Notice, Larry S. Hyman (the "Assignee") states as follows:

## I. PROCEDURAL AND FACTUAL BACKGROUND

1.      On July 20, 2010, a Petition was filed with this Court initiating an assignment for the benefit of creditors (the "**Petition Date**"), thereby creating an assignment estate comprised of all of the Assignor's assets.  Larry S. Hyman is the Assignee of the assets of the Assignor and is to "collect and reduce to money the assets of the estate . . . by public or private sale" for the benefit of the estate's creditors.  Florida Statutes §727.108(1).

2.      Schedule "A" of the Assignment reflects that Castlerigg Master Investments, Ltd. has a blanket lien on the assets in connection with its being owed approximately $5.4 million dollars.  In addition, Debt Opportunity Fund, LLLP, as Collateral Agent c/o Vicis Capital Master Fund is also listed as having a blanket lien on the assets in connection with its being owed approximately $3.6 million dollars.

3.      The Assignor has been engaged in the business of manufacturing law enforcement technology.

4.      In furtherance of his duties as Assignee under Florida Statutes §727.108, sale of the assets as contemplated by this Notice is in the best interest of the estate.

2

## II. ASSETS FOR SALE

5.     By this Sale Notice, the Assignee seeks to sell all assets of the Assignor including both tangible and intangible property (the "**Purchased Assets**").[1]

6.     The Assignee has received an offer from Kurbon Arms, Inc. (the "**Purchaser**") to purchase the Purchased Assets for the assumption of the secured debt due and owing to both Castlerigg Master Investments, Ltd ("**Castlerigg**") and Vicis Capital Master Fund ("**Vicis**") (collectively, the "**Assumed Obligations**") plus the payment of $25,000 in cash (the "**Cash Proceeds**"). A true and correct copy of a letter dated August 9, 2010, setting for the Purchaser's offer (the "**Offer**") is attached hereto as Exhibit "A".

7.     Assignee adopts the Offer and contemplates by this Notice to sell the Purchased Assets to the Purchaser, absent a timely objection, as soon after September 6, 2010 (the date which provides at least 20 days notice as required under Florida Statutes §727.111(4)) as possible, but, in any event, no later than September 8, 2010. In the event of an objection, the Assignee will seek approval from the Court to sell the assets of the estate and to consummate the sale on September 8th, immediately after the Objection Hearing. Assignee reserves the right to modify the Offer. In the event of any modification to the Offer, the Assignee will file and serve such amendments on all creditors.

8.     The Purchaser has posted the full amount of the Cash Proceeds with the Assignee as a deposit.

---

[1] As set forth in the Offer, the Purchased Assets include, but are not limited to, all tangible property, including but not limited to, furniture, fixtures, machinery, equipment, tools, and inventory ("Inventory") and the following intangible property: all right, title and interest of the estate, if any, under leases of personal property and equipment and under the leases for the Premises, intellectual property (including, without limitation, trademarks, tradenames, and service marks), telephone numbers and telephone listings, insurance policies, trade account receivable ("Accounts"), promissory notes arising from Accounts, all causes of action related to the Purchased Assets, contingent and unliquidated claims, counterclaims and rights to set off claims related to the Purchased Assets, customer lists, goodwill and other intangible property related to the Business, which are located at the Premises on the Closing Date.

3

9.   As noted in the Offer, Robert F. Gruder, an officer and shareholder of the Assignor, is the sole shareholder of the Purchaser.

10.   Notwithstanding anything contrary in the Offer through this Sale Notice, the sale is subject to the following:

    a.   The Purchased Assets will be sold on a 'WHERE IS' and 'AS IS' basis with no representations or warranties of any nature whatsoever from the Assignee or Assignor;

    b.   The purchase price to be paid by the Purchaser to the Assignee for the Purchased Assets is approximately $9,115,777.20 (the "Purchase Price") which consists of (i) the assumption of the Assumed Obligations and (ii) Cash Proceeds of $25,000.  Upon consummation of the sale, the Cash Proceeds shall be held by the Assignee and disbursed pursuant to further order of this Court;

    c.   In the event an objection is filed, the sale of the Purchased Assets is subject to Court approval;

    d.   The sale of the Purchased Assets is subject to higher and better offers;

    e.   The sale of the Purchased Assets is free and clear of all claims and encumbrances, other than the Assumed Obligations;

    f.   The Offer is not subject to any contingencies other than approval of a Court in the event of an objection; and

    g.   If either sought by Assignee (in the event no objection is filed) or if approved by the Court at the Objection Hearing (which will be held if an objection is filed), the order granting the Sale Notice (the "Sale Order") will provide that the sale of the Purchased Assets is free and clear of all claims and

4

encumbrances, other than the Assumed Obligations. Claimants' exclusive remedy is to file a Proof of Claim in the assignment proceeding.

### III. NOTICE OF BID PROCEDURES

11.     The Assignee provides notice that he will require compliance with the procedures set forth herein. Assignee believes that the purchase, bidding and sale process set forth herein will create a fair and level playing field for all interested bidders. The Assignee submits that these procedures will satisfy all interested parties by assuring that the Assignee will achieve the maximum value set for the Purchased Assets.

12.     The following procedures for the submission and consideration of any bid ("**Bid**") by any bidder or competing bidder ("**Bidder**") for the Purchased Assets shall be as follows:

a.     Any Bidder must deliver a Bid for the Purchased Assets by no later than **4:30 P.M. (Eastern Standard Time)** on **September 1, 2010** (the "**Bid Deadline**") to the following:

> Larry S. Hyman, Assignee
> 106 So. Tampania Avenue, Suite 200
> Tampa, Florida 33609
>
> With a copy to:
>
> Elena Paras Ketchum, Esquire
> Stichter Riedel Blain & Prosser, P.A.
> 110 East Madison Street, Suite 200
> Tampa, Florida 33602

13.     The following conditions shall pertain to each Bid and shall be referred to as the "Bid Conditions."

a.     A copy of the Offer executed by Bidder, with terms no less favorable to the Assignee than contained in the Offer;

5

b.    Statement setting forth the extent to which the Bid is higher and better than the present Offer;

c.    Relevant background and financial information reasonable satisfactory to the Assignee demonstrating the Bidder's financial ability to close and consummate the sale;

d.    A deposit in cash or cashier's check in the full amount of the cash component of the Bid;

e.    Any Bid shall not be contingent upon receipt of financing necessary to its consummation;

f.    Any Bid shall not contain any conditions precedent to such Bidder's obligation to purchase or otherwise acquire the Purchased Assets; and

g.    Statement that the Bidder consents to purchase the Purchased Assets on an "as is" and "where is" basis, with no representations or warranties by the Assignee.

14.    Any auction to consider any qualified competing bid with respect to the Purchased Assets will be held on **September 7, 2010, at 3:30 p.m.** (Eastern Standard Time) at the law firm of Stichter Riedel Blain & Prosser, P.A., 110 E. Madison Street, Suite 200, Tampa, Florida 33602 (the "**Auction**").

15.    Any initial Bid must exceed the Cash Proceeds by $1,000 (the "**Overbid**") and all subsequent higher Bids must be in increments of $1,000.

16.    In the event that any Bid fails to conform to the Bid Conditions, such Bid shall be rejected immediately and given no further consideration.

6

17.    The second highest Bid and Bidder (the "Backup Bidder") at the Auction shall enter into a binding contract with the Assignee in the event the successful Bidder fails to consummate the acquisition of the Purchased Assets in accordance with the provisions described above.  Any closing on the Backup Bidder shall occur with one (1) day of notification that the successful Bidder has failed to close.

18.    Once the Assignee has consummated a sale of the assets, any deposits held by the Assignee will be returned to the bidder or proposed purchaser who was not the successful bidder or purchaser.

#### IV.  NOTICE AND OPPORUNITY TO OBJECT

19.    Florida Statute 727.111(4) provides that the assignee "shall give the assignor and all creditors not less than 20 days' notice by mail of a proposed sale of assets of the estate other than in the ordinary course of business....  Any and all objections to the proposed action must be filed and served upon the assignee and the assignee's attorney, if any, not less than 3 days  before the date of the proposed action....  If no objections are timely filed and served, the assignee may take such action as described in the notice without further order of the court...."

20.    Any objections to the sale of the Purchased Assets must be filed and served with the Clerk of the Circuit Court for Thirteenth Judicial Circuit, Hillsborough County, 800 E. Twiggs Street, Tampa, FL 33602, and upon the Assignee, Larry S. Hyman, 106 So. Tampania Avenue, Suite 200, Tampa, Florida  33609 (including by facsimile transmission at 813/837-4652); and the Assignee's counsel, Elena Paras Ketchum, Esq., Stichter Riedel Blain & Prosser, 110 E. Madison Street, Suite 200, Tampa, Florida 33602 (including by facsimile transmission at 813/229-1811).

7

21.     All creditors and parties in interest have to and including <u>Wednesday, September 1, 2010</u> to object to the sale of the assets of the estate as contemplated by this Notice.

22.     Absent timely objections, Assignee may complete the sale of the Purchased Assets to the Purchaser or the winning bidder, in the event of an auction, without further action of the Court.   This Notice complies with the requirements identified above and absent timely objections, Assignee may require bid procedures as set forth herein and complete the sale of the assets to the Purchaser or winning bidder.

23.     Assignee gives notice that he will conduct the sale as set forth herein, sell the Purchased Assets and deposit proceeds into an escrow account for the benefit of the estate's creditors.

24.     All parties requesting the opportunity to bid on the Purchased Assets must comply with the terms set forth herein.

25.     In the event of a timely objection, the Sale Notice and objection shall be heard before the Honorable James M. Barton, Circuit Judge, on <u>September 8, 2010, at 2:15 p.m.,</u> in Hearing Room 512, George E. Edgecomb Courthouse - 800 E. Twiggs Street, Tampa, FL 33602.

DATED this 13th day of August, 2010.

Elena Paras Ketchum (Florida Bar No. 0129267)
STICHTER, RIEDEL, BLAIN & PROSSER, P.A.
110 East Madison Street, Suite 200
Tampa, Florida 33602
PH     (813) 229-0144
FAX   (813) 229-1811
Attorneys for Assignee
eketchum@srbp.com

8

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the Notice of and Motion to Authorize the Sale of Certain Assets; to Establish Bidding and Sale Procedures; and Notice of Hearing on Any Timely Filed Objections, has been furnished by U.S. Mail on this 13th day of August, 2010, to:

Larry S. Hyman, Assignee
106 So. Tampania Avenue
Suite 200
Tampa, Florida  33609

(for service on: all parties listed on the Matrix. Upon service to such parties, a representative of Assignee will file with the Court an affidavit of service.)

Elena Paras Ketchum

9

# EXHIBIT "A"

Robert F. Gruder
4911 Saint Croix Drive
Tampa, FL 33629

August 9, 2010

Mr. Larry S. Hyman
Larry S. Hyman, C.P.A. and Associates
106 South Tampania Avenue
Suite 200
Tampa, Florida 33609

Dear Mr. Hyman,

I would like to present an offer to purchase the assets of Stinger Systems, Inc.:

**Purchase of Assets.**

Buyer being Karbon Arms, Inc., a Delaware Corporation, wholly owned by Robert Gruder, agrees to purchase the rights, title and interest, to the Purchased Assets, as defined in this offer letter. The purchase price for the Purchased Assets shall be $25,000 plus assuming the secured debt of Stinger Systems, Inc. by Castlerigg and Vicis funds for an aggregate purchase price of approximately $9,115,777.20 ("**Purchase Price**").
"**Purchased Assets**" means assets, collectively all tangible property, including but not limited to, furniture, fixtures, machinery, equipment, tools, and inventory ("**Inventory**"), and the following intangible property: all right, title and interest of Seller, if any, under leases of personal property and equipment and under the leases for the Premises, intellectual property (including, without limitation, trademarks, tradenames, and service marks), telephone numbers and telephone listings, insurance policies, trade accounts receivable ("**Accounts**"), promissory notes arising from Accounts, all causes of action related to the Purchased Assets, contingent and unliquidated claims, counterclaims and rights to set off claims related to the Purchased Assets, customer lists, goodwill and other intangible property related to the Business, which is located at the Premises on the Closing Date.

1.      **Payment of Purchase Price.**

Buyer shall deliver to Seller by certified, bank check, or electronic transfer $25,000.

2.      **Assumption of Liabilities.**

At Closing Buyer shall assume and agree to pay, discharge or perform as appropriate only the following liabilities and obligations (the "**Assumed Liabilities**"):

a.      All debts of secured loans to Castlerigg Master Fund and Vicis Capital funds

b.      All property leases and equipment leases.

Except for the Assumed Liabilities, Buyer is not assuming, nor shall it in any way be liable or responsible for, any liabilities, obligations or debts of Seller, whether accrued, absolute, contingent or otherwise, arising before or after the Closing.

3.      **Closing.**

a.      In the event that Buyer is the successful Buyer following the hearing, the consummation of the purchase and sale of the Purchased Assets (the "Closing") shall be held at 4:00 p.m. on the date of the approval or sooner by agreement of the parties, at such place as Buyer and Seller may agree.

b.      At the Closing, Seller shall deliver the Purchased Assets to Buyer and shall deliver the following documents to Buyer:

i.      an Assignee's Bill of Sale;

ii.     an Assignment, Acceptance and Assumption Agreement pursuant to which Seller shall assign and Buyer shall assume and agree to pay all Assumed Liabilities ("Assignment");

iii.    list of Accounts;

iv.     list of Inventory;

v.      Closing Statement; and

vi.     such other documents as may be reasonably requested by Purchaser in connection with the consummation of the transactions contemplated by this Agreement.

c.      At Closing Buyer shall pay to Seller the Purchase Price and shall deliver to Seller the following documents:

i.      executed counterparts of the Assignment;

ii.     copies, certified by the appropriate governmental official of the State of Florida as of a date not more than ten (10) days prior to the Closing Date, of its articles of incorporation and all amendments thereto;

iii.    executed counterparts of the Closing Statement; and

4.      **Delivery and Condition of the Purchased Assets.**

a.      Buyer agrees that it is purchasing and shall take possession of the Purchased Assets in
their AS IS, WHERE IS condition.

b.      This offer will be assumable and/or assignable by Robert Gruder to a business entity to
be named later.

Sincerely,

Robert Gruder

CC: Elena Para Ketchum, Stichter Riede, Blain & Prosser, P.A.

# Exhibit 14

**From:** Vann McCollough <vmccollough@clwrg.com>
**Sent:** 08/18/2010 01:57:00 pm
**To:** Bob Gruder <BGruder@stingersystems.com>; Brian Gannon <bgannon@stingersystems.com>
**Cc:** Jeff Bardin <jbardin@clwrg.com>
**Bcc:**
**Subject:** RE: Your Space

---

Thanks Bob. Brian and I traded emails this afternoon and he filled me in on the situation. Please let us know when you would like to get together.


Regards,


Vann


---

From: Bob Gruder [mailto:BGruder@stingersystems.com]
Sent: Wednesday, August 18, 2010 4:43 PM
To: Vann McCollough; Brian Gannon
Cc: Jeff Bardin
Subject: RE: Your Space


Vann,


I received your voicemail. Stiinger is on vacation this week. We will be back in the office on Monday. Because of all of the legal issues with Taser, Stinger really had no alternative than to follow the legal route that you have been issued notices about. The offer to purchase that you received hopefully will be granted on the September 6th date indicated in the document. If it is approved by the judge on that date, the new company, Karbon Arms, Inc. would absolutely like to occupy the space Stinger presently leases. Most of the employees of Stinger have been offered a position with Karbon and they all have accepted their offers, pending judges approval for Karbon to purchase Stinger's assets.


Bob

From: Vann McCollough [mailto:vmccollough@clwrg.com]
Sent: Wed 8/18/2010 3:09 PM
To: Brian Gannon; Bob Gruder
Cc: Jeff Bardin
Subject: RE: Your Space

Brian,

The lease is assignable. There are sections in the lease that
specifically addresses this. I hope to speak with you on Monday.

Regards,

Vann McCollough


-----Original Message-----
From: Brian Gannon [mailto:bgannon@stingersystems.com]
Sent: Wednesday, August 18, 2010 3:05 PM
To: Vann McCollough; bgruder@stingersystems.com
Subject: RE: Your Space

Yes. We were going to contact you to ensure that the lease is assumable.
I will be in the office on Monday if you would like to discuss this
then.
Thank you,
Brian

-----Original Message-----
From: Vann McCollough [vmccollough@clwrg.com]
Sent: Wednesday, August 18, 2010 2:16 PM
To: Brian Gannon [bgannon@stingersystems.com]
Subject: Your Space

Brian,


I see that Bob and another company have made an offer to buy the assets
of Stinger Systems. Do you think they will remain in the Thompson Center
II space?


Thanks,


Please be environmentally sensitive; think before you print

Vann McCollough | CLW Industrial Group, LLC

(vmccollough@clwrg.com) | Phone 813.885.1110 | Fax 813.885.1101

6302 Benjamin Road | Suite 407 | Tampa, FL 33634

www.clwrg.com

This e-mail, and any attachments thereto, is intended only for use by
the addressee(s) named herein or entity named above and may contain
legally privileged and/or confidential information. If you are not the
intended recipient of this e-mail, you are hereby notified that any
dissemination, distribution or copying of the e-mail, and any
attachments thereto, is strictly prohibited. If you have received this
e-mail in error, please immediately notify me and permanently delete the
original and any copy of any e-mail and any printout thereof. Thank you.

1 Attachment

# Exhibit 15

**From:** Bob Gruder <bob@stingersystems.com>
**Sent:** 08/23/2010 05:09:34 pm
**To:** james mcnulty <macslaw2000@yahoo.co.in>
**Cc:** P. Sterling Kerr <psklaw@aol.com>
**Bcc:**
**Subject:** RE: DISCOVERY

We will put that notice on our website tomorrow. That is considered a public notice. Stinger is shutting down and putting out a press release via the wires is not appropriate at this stage of Stinger's life. Final ruling on the ABC is expected on September 8th.

Yes we intend on a reexamination but that could take months for the office to decide and we cannot wait until then to start a new product. The newly engineered gun does not work in multi-modes it is clearly a single mode of operation. Even an imbecile judge would be able to understand that if shown evidence.

From: james mcnulty [mailto:macslaw2000@yahoo.co.in]
Sent: Mon 8/23/2010 5:58 PM
To: Bob Gruder
Cc: P. Sterling Kerr
Subject: RE: DISCOVERY

Thanks, Bob. What about the release dismissing me as counsel? It is a little embarrassing for me, but Sterling thinks that this is a good idea too. Neither of us wants you caught up in any of my individual releases, which I have been chomping at the bit to do. I have held off for several weeks now to avoid getting you involved inadvertently, but I do not want to wait so long that they are no longer news. I am going to release them shortly, and all hell is likely to break loose when I do. It should only be a matter of a day for you to do a short release and distance yourself. Please, let me know today. Also, do you still have any interest in the reexamination? Again, I do not think that you should proceed to manufacture a new gun through any company until re-exams are at least opened. You know Taser will sue you personally for infringement this time, and go after you for violating Phoenix Case Orders that it will there likely obtain. Please respond.

Jim

--- On Mon, 23/8/10, Bob Gruder [BGruder@stingersystems.com] wrote:

From: Bob Gruder [BGruder@stingersystems.com]
Subject: RE: DISCOVERY
To: ""james mcnulty"" [macslaw2000@yahoo.co.in], ""P. Sterling Kerr"" [psklaw@aol.com]
Cc: ""Marvin Simeon"" [marvin.simeon@students.law.unlv.edu]
Date: Monday, 23 August, 2010, 1:07 PM

Our IT guy will be finishing up the discovery request tomorrow. I will be FedExing a disc which you

will receive on Wednesday. We were on vacation last week and the IT guy said there were a few corrupted files that he could not get remotely so he has to do it in person.

Bob

---

# Exhibit 16

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/009,835 | 11/29/2010 | 6999295 | 101.01745 | 3645 |

| 49754 | 7590 | 05/02/2011 |
|---|---|---|

TASER INTERNATIONAL, INC.
17800 N. 85TH STREET
SCOTTSDALE, AZ  85255-9603

| EXAMINER |
|---|
|  |

| ART UNIT | PAPER NUMBER |
|---|---|
|  |  |

DATE MAILED: 05/02/2011

Please find below and/or attached an Office communication concerning this application or proceeding.

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

SMITH HOPEN, PA

180 PINE AVENUE NORTH

OLDSMAR, FL 34677

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/009,835*.

PATENT NO. *6999295*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| *Notice of Intent to Issue* *Ex Parte Reexamination Certificate* | Control No. | Patent Under Reexamination |
|---|---|---|
| | 90/009,835 | 6999295 |
| | Examiner | Art Unit | |
| | ALBERT J. GAGLIARDI | 3992 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

1. ☒ Prosecution on the merits is (or remains) closed in this *ex parte* reexamination proceeding. This proceeding is subject to reopening at the initiative of the Office or upon petition. *Cf.* 37 CFR 1.313(a). A Certificate will be issued in view of
    (a) ☒ Patent owner's communication(s) filed: <u>04 April 2011</u>.
    (b) ☐ Patent owner's late response filed: _____.
    (c) ☐ Patent owner's failure to file an appropriate response to the Office action mailed: _____.
    (d) ☐ Patent owner's failure to timely file an Appeal Brief (37 CFR 41.31).
    (e) ☐ Other: _____.
    Status of *Ex Parte* Reexamination:
    (f) Change in the Specification: ☐ Yes ☒ No
    (g) Change in the Drawing(s): ☐ Yes ☒ No
    (h) Status of the Claim(s):
        (1) Patent claim(s) confirmed: <u>1-40</u>.
        (2) Patent claim(s) amended (including dependent on amended claim(s)): _____.
        (3) Patent claim(s) canceled: _____.
        (4) Newly presented claim(s) patentable: _____.
        (5) Newly presented canceled claims: _____.
        (6) Patent claim(s) ☐ previously ☐ currently disclaimed: _____
        (7) Patent claim(s) not subject to reexamination: _____.

2. ☒ Note the attached statement of reasons for patentability and/or confirmation. Any comments considered necessary by patent owner regarding reasons for patentability and/or confirmation must be submitted promptly to avoid processing delays. Such submission(s) should be labeled: "Comments On Statement of Reasons for Patentability and/or Confirmation."

3. ☐ Note attached NOTICE OF REFERENCES CITED (PTO-892).

4. ☒ Note attached LIST OF REFERENCES CITED (PTO/SB/08 or PTO/SB/08 substitute).

5. ☐ The drawing correction request filed on _____ is: ☐ approved ☐ disapproved.

6. ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).
    a)☐ All  b)☐ Some*  c)☐ None  of the certified copies have
        ☐ been received.
        ☐ not been received.
        ☐ been filed in Application No. _____.
        ☐ been filed in reexamination Control No. _____.
        ☐ been received by the International Bureau in PCT Application No. _____.
    * Certified copies not received: _____.

7. ☐ Note attached Examiner's Amendment.

8. ☒ Note attached Interview Summary (PTO-474).

9. ☐ Other: _____.

cc: Requester (if third party requester)

U.S. Patent and Trademark Office
PTOL-469 (Rev. 05-10)    Notice of Intent to Issue Ex Parte Reexamination Certificate    Part of Paper No 20110421

Application/Control Number: 90/009,835                                Page 2
Art Unit: 3992

## STATEMENT OF REASONS FOR PATENTABILITY AND/OR CONFIRMATION

***Comment on Submissions***

     This is an *ex parte* reexamination of U.S. Patent No. 6,999,295 to Watkins, III *et al.*

(hereafter *Watkins*).  This communication is responsive to Patent Owner's Remarks filed 4 April

2011.

***Summary***

     The status of the claims is as follows:

          Claims 1-40 are confirmed.

***Reasons for Patentability/Confirmation***

     Claims 1-40 (claims 1, 2, 3, 4, 23, 31 and 40 being independent) are patentable or

confirmed over the cited prior art of record.

     The following is an examiner's statement of reasons for confirmation of the claims found

patentable in this reexamination proceeding.

**Independent claims 2, 3, 4 and 40, and the claims dependent therefrom**

     **Regarding independent claims 2, 3, 4 and 40,** the claims are confirmed over the cited

prior art of record for the reasons generally noted by Patent Owner in the Remarks, particularly

the arguments noted at pages 3-4.

     In view of Patent Owner comments, it is now considered that the cited prior art (*Rhoads*)

does not disclose or fairly suggest a dual operating mode electronic disabling device (claims 2, 3

and 4) or method of immobilizing the muscles of a target (claim 40) comprising at least first and

second electrodes positionable to establish first and second spaced apart contact points on a

target and a power supply providing both first and second voltage outputs, as specifically

Application/Control Number: 90/009,835                                    Page 3
Art Unit: 3992

claimed, and further wherein *a high impedance air gap may exist between at least one of the electrodes and the target*, and wherein the first high voltage output provided across the first and second electrodes *is sufficient to ionize the air within air gap to thereby reduce the high impedance across the air gap to a lower impedance to enable current flow across the air gap* at a lower voltage level

As noted by the Patent Owner, *Rhoads* teaches that in the absence of a resistance, such as a portion of the body, across the output electrodes, the circuit is normally quiescent with the only power consumed being the leakage current between the collector-emitter electrodes of the output transistor, the input base electrode being effectively open circuited (*Rhoads* at col. 1, lines 49-55).

In other words, when no portion of a body is in contact with the electrodes (that is to say, when there is an air gap between the electrodes and a target) there is no high voltage output across the electrodes. As asserted by the Patent Owner, the high voltage output from the *Rhoads* circuit does not occur before the feedback current exists (p, 7-8), such that there can not be any high voltage pulse when a gap exists between  an electrode and the target (p. 9).

**Independent claims 1, 23 and 31, and the claims dependent therefrom**

The claims are considered patentable or confirmed for the reasons of record noted in the Non-Final Rejection (mailed 2/02/2011), which for convenience, have been reproduced below essentially as originally noted.

**Regarding independent claim 1**, *Rhoads* does not disclose or fairly suggest, nor would it have been obvious in view of the cited prior art to modify *Rhoads* so as to include a second transformer with a lower output voltage [than a first transformer] to maintain current across the

Application/Control Number: 90/009,835                                     Page 4
Art Unit: 3992

arc to disable a subject. It is noted that while the system for administering an electric shock as

taught by *Rhoads* suggests a system wherein a first large voltage pulse is first applied to a subject

so as to breakdown skin resistance, which is followed by second sequence of lower voltage

oscillatory pulses, there is no suggestion that system could be adapted to use more than the single

transformer (20) as illustrated in Fig. 2. The system taught by *Rhoads* necessarily relies on a

circuit wherein at least transistors Q1 and Q2 (as well as the subject) interact so as to generate

two different voltage outputs from the same single transformer. It is unclear how one could

modify the circuit to include two transformers without changing the principle of operation of the

*Rhodes* device. Additionally, there is no suggestion of a predictable result that would occur from

such a modification.

     **Regarding independent claim 23,** *Rhoads* does not disclose or fairly suggest, nor would

it have been obvious in view of the cited prior art to modify *Rhoads* so as to include both a high

voltage output circuit coupled to the voltage conversion stage output terminal for generating a

high voltage output across the first and second electrodes during a first time interval **and** a low

voltage output circuit coupled to the voltage conversion stage output terminal for generating a

lower voltage output across the first and second electrodes during a time second time interval.

     It is noted that the system for administering an electric shock as taught by *Rhoads* relies

on a single circuit and single transformer to provide both the high and low voltage outputs. It is

unclear how or why one would modify or alter the circuit to include separate circuits for each of

the high and low voltage outputs. Additionally, there is no suggestion of a predictable result that

would occur from such a modification.

Application/Control Number: 90/009,835                                   Page 5
Art Unit: 3992

**Regarding independent claim 31,** *Rhoads* does not disclose or fairly suggest a method

for selectively operating an electronic disabling device in first and second modes to immobilize a

target, nor would it have been obvious in view of the cited prior art to modify *Rhoads* so as to

include a step of simultaneously directing a charging current to first and second energy storing

capacitors during a first interval.  It is noted that in the system for administering an electric shock

as taught by *Rhoads*, which relies on a circuit wherein at least transistors Q1 and Q2 (as well as

the subject) interact so as to generate two different oscillatory voltage outputs.  It is unclear how

or why one would modify the circuit to include storage capacitors.  Additionally, there is no

suggestion of a predictable result that would occur from such a modification.

Since the system disclosed by *Rhoads* does not utilize storage capacitors, and would not

appear to benefit from the inclusion of such capacitors, it is unclear how or why one would

modify a method of operating the system taught by *Rhoads* to include a step of charging the

capacitors.  Additionally, there is no suggestion of a predictable result that would occur from

such a modification.

**Any comments** considered necessary by PATENT OWNER regarding the above

statement must be submitted promptly to avoid processing delays.  Such submission by the

patent owner should be labeled: "Comments on Statement of Reasons for Patentability and/or

Confirmation" and will be placed in the reexamination file.

*Conclusion*

EXTENSIONS OF TIME

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings

because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a

Application/Control Number: 90/009,835                                    Page 6
Art Unit: 3992

reexamination proceeding.  Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination

proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)).  Extensions of time in

ex parte reexamination proceedings are provided for in 37 CFR 1.550(c).

### AMENDMENT IN REEXAMINATION PROCEEDINGS

Patent owner is notified that any proposed amendment to the specification and/or claims

in this reexamination proceeding must comply with 37 CFR 1.530(d)-(j), must be formally

presented pursuant to 37 CFR § 1.52(a) and (b), and must contain any fees required by 37 CFR §

1.20(c).  See MPEP § 2250(IV) for examples to assist in the preparation of proper proposed

amendments in reexamination proceedings.

### SERVICE OF PAPERS

After the filing of a request for reexamination by a third party requester, any document

filed by either the patent owner or the third party requester must be served on the other party (or

parties where two or more third party requester proceedings are merged) in the reexamination

proceeding in the manner provided in 37 CFR 1.248.  See 37 CFR 1.550(f).

### SUBMISSIONS

This NIRC informs the patent owner and any third party requester that the reexamination

prosecution has been terminated.  The rules do not provide for an amendment to be filed in a

reexamination proceeding after prosecution has been terminated. The provisions of 37 CFR

1.312 do not apply in reexamination. Any amendment, information disclosure statement, or other

paper related to the merits of the reexamination proceeding filed after prosecution has been

terminated must be accompanied by a petition under 37 CFR 1.182 to have the amendment

considered.

Application/Control Number: 90/009,835                                    Page 7
Art Unit: 3992

### NOTIFICATION OF CONCURRENT PROCEEDINGS

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to

apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving

Patent No. 6,999,295 throughout the course of this reexamination proceeding. The third party

requester is also reminded of the ability to similarly apprise the Office of any such activity or

proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282

and 2286.

Application/Control Number: 90/009,835                                              Page 8
Art Unit: 3992

All correspondence relating to this *ex parte* reexamination proceeding should be directed:

By Mail to:   Mail Stop *Ex Parte* Reexam
              Central Reexamination Unit
              Commissioner for Patents
              United States Patent & Trademark Office
              P.O. Box 1450
              Alexandria, VA 22313-1450

By FAX to:  (571) 273-9900
              Central Reexamination Unit

By hand:      Customer Service Window
              Randolph Building
              401 Dulany Street
              Alexandria, VA 22314

Registered users of EFS-Web may alternatively submit such correspondence via the electronic filing system
EFS-Web, at https://sportal.uspto.gov/authenticate/authenticateuserlocalepf.html. EFS-Web offers the benefit
of quick submission to the particular area of the Office that needs to act on the correspondence. Also, EFS-
Web submissions are "soft scanned" (i.e., electronically uploaded) directly into the official file for the
reexamination proceeding, which offers parties the opportunity to review the content of their submissions after
the "soft scanning" process is complete.

Any inquiry concerning this communication should be directed to the Central

Reexamination Unit at telephone number (571) 272-7705.

Signed:

/Albert J Gagliardi/
Examiner, Art Unit 3992

Conferees:

/Erik Kielin/
Primary Examiner, Art Unit 3992

| *Ex Parte Reexamination Interview Summary* | Control No. 90/009,835 | Patent Under Reexamination 6999295 | |
|---|---|---|---|
| | Examiner ALBERT J. GAGLIARDI | Art Unit 3992 | |

All participants (USPTO personnel, patent owner, patent owner's representative):

(1) *ALBERT J. GAGLIARDI*               (3) *Eric Keasel (USPTO)*

(2) *Christina Leung (USPTO)*            (4) *William Bachand (PO Rep.)*

Date of Interview: *31 March 2011*

Type:   a)☐  Telephonic   b)☐  Video Conference
        c)☐  Personal (copy given to:  1)☐ patent owner     2)☒ patent owner's representative)

Exhibit shown or demonstration conducted:   d)☐ Yes     e)☒ No.
    If Yes, brief description: _____

Agreement with respect to the claims  f)☐  was reached.   g)☒  was not reached.   h)☐   N/A.
Any other agreement(s) are set forth below under "Description of the general nature of what was agreed to…"

Claim(s) discussed: *2,4,5 and 40*.

Identification of prior art discussed: *Rhoads*.

Description of the general nature of what was agreed to if an agreement was reached, or any other comments:
*Discussed meaning of "mode" of operation and meaning and scope of other terms. No agreement was reached* .

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims patentable, if available, must be attached.  Also, where no copy of the amendments that would render the claims patentable is available, a summary thereof must be attached.)

A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION MUST INCLUDE PATENT OWNER'S STATEMENT OF THE SUBSTANCE OF THE INTERVIEW. (See MPEP § 2281). IF A RESPONSE TO THE LAST OFFICE ACTION HAS ALREADY BEEN FILED, THEN PATENT OWNER IS GIVEN **ONE MONTH** FROM THIS INTERVIEW DATE TO PROVIDE THE MANDATORY STATEMENT OF THE SUBSTANCE OF THE INTERVIEW (37 CFR 1.560(b)). THE REQUIREMENT FOR PATENT OWNER'S STATEMENT CAN NOT BE WAIVED. **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

| /Albert J Gagliardi/ Examiner, Art Unit 3992 | | |
|---|---|---|

cc: Requester (if third party requester)

Receipt date: 04/04/2011                                    90009835 - GAU: 3992

| This List of References filed __4/4/2011__ | | | | REEX Control Number | 90/009,835 |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | | Patent No. | **6,999,295** |
| | | | | Filing Date | **Nov 29, 2010** |
| | | | | First Named Inventor | **Watkins** |
| | | | | Art Unit | **3992** |
| | | | | Examiner Name | **Albert J. Garliardi** |
| Sheet | 1 | of | 4 | Attorney Docket No: **101.01745** | |

### US PATENT DOCUMENTS

| Examiner Initial * | Cite No [1] | Document Number | Publication Date | Name of Patentee or Applicant of Cited Document |
|---|---|---|---|---|
| | | RE38794 | Sep 13, 2005 | Danner |
| | | 2011/0050177 | Mar 3, 2011 | Nerheim |
| | | 2011/0043961 | Feb 24, 2011 | Nerheim |
| | | 2001/0032405 | Oct 25, 2001 | Kaminski |
| | | 2007/0019358 | Jan 25, 2007 | Kroll |
| | | 2805067 | Sep 3, 1957 | Ryan |
| | | 2896123 | Jul 21, 1959 | McNulty |
| | | 3223887 | Dec 14, 1965 | Brown |
| | | 3295528 | Jan 3, 1967 | Masaki |
| | | 3376470 | Apr 2, 1968 | Stone |
| | | 3450942 | Jun 17, 1969 | Segall |
| | | 3523538 | Aug 11, 1970 | Shimizu |
| | | 3569727 | Mar 9, 1971 | Aggarwal |
| | | 3584929 | Jun 15, 1971 | Schuette |
| | | 3626626 | Dec 14, 1971 | Blanc |
| | | 3629652 | Dec 21, 1971 | Maycock |
| | | 3717802 | Feb 20, 1973 | Plevy |
| | | 3803463 | Apr 9, 1974 | Cover |
| | | 3819108 | Jun 25, 1974 | Jordan |
| | | 3869645 | Mar 4, 1975 | Collins |
| | | 3917268 | Nov 4, 1975 | Tingey |
| | | 3958168 | May 18, 1976 | Grundberg |
| | | 3972315 | Aug 3, 1976 | Munden |
| | | 4004561 | Jan 25, 1977 | Thieme |
| | | 4027198 | May 31, 1977 | Linkroum |
| | | 4040425 | Aug 9, 1977 | Goodling |
| | | 4092695 | May 30, 1978 | Henderson |
| | | 4120305 | Oct 17, 1978 | Rhoads |
| | | 4129895 | Dec 12, 1978 | Witting |
| | | 4154205 | May 15, 1979 | Forster |
| | | 4162515 | Jul 24, 1979 | Henderson |
| | | 4167036 | Sep 4, 1979 | Kenney |
| | | 4220443 | Sep 2, 1980 | Bear |
| | | 4228405 | Oct 14, 1980 | Rhoads |
| | | 4242715 | Dec 30, 1980 | Laird |
| | | 4253132 | Feb 24, 1981 | Cover |

| EXAMINER | 04/21/2011 | DATE CONSIDERED | 04/21/2011 |
|---|---|---|---|

* EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.
1 Applicant's unique citation designation number (optional)
2 Applicant is to place a check mark here if English language Translation is attached.

### ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /AJG/

Receipt date: 04/04/2011                                    90009835 - GAU: 3992

| This List of References filed __4/4/2011__ | | | | | REEX Control Number | 90/009,835 |
|---|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | | | Patent No. | 6,999,295 |
| | | | | | Filing Date | Nov 29, 2010 |
| | | | | | First Named Inventor | Watkins |
| | | | | | Art Unit | 3992 |
| | | | | | Examiner Name | Albert J. Garliardi |
| Sheet | 2 | of | 4 | | Attorney Docket No: **101.01745** | |

### US PATENT DOCUMENTS

| Examiner Initial * | Cite No ¹ | Document Number | Publication Date | Name of Patentee or Applicant of Cited Document |
|---|---|---|---|---|
| | | 4370696 | Jan 25, 1983 | Darrell |
| | | 4486807 | Dec 4, 1984 | Yanez |
| | | 4510915 | Apr 16, 1985 | Ishikawa |
| | | 4539937 | Sep 10, 1985 | Workman |
| | | 4541191 | Sep 17, 1985 | Morris |
| | | 4541848 | Sep 17, 1985 | Masuda |
| | | 4589398 | May 20, 1986 | Pate |
| | | 4613797 | Sep 23, 1986 | Eggers |
| | | 4688140 | Aug 18, 1987 | Hammes |
| | | 4691264 | Sep 1, 1987 | Schaffhauser |
| | | 4755723 | Jul 5, 1988 | Sikora |
| | | 4843336 | Jun 27, 1989 | Kuo |
| | | 4846044 | Jul 11, 1989 | Lahr |
| | | 4859868 | Aug 22, 1989 | McKissack |
| | | 4872084 | Oct 3, 1989 | Dunning |
| | | 4884809 | Dec 5, 1989 | Rowan |
| | | 4900990 | Feb 13, 1990 | Sikora |
| | | 4949017 | Aug 14, 1990 | Sikora |
| | | 5060131 | Oct 22, 1991 | Sikora |
| | | 5078117 | Jan 7, 1992 | Cover |
| | | 5163411 | Nov 17, 1992 | Koiwa |
| | | 5178120 | Jan 12, 1993 | Howson |
| | | 5193048 | Mar 9, 1993 | Kaufman |
| | | 5215066 | Jun 1, 1993 | Narishige |
| | | 5225623 | Jul 6, 1993 | Krasnow |
| | | 5282332 | Feb 1, 1994 | Philips |
| | | 5317155 | May 31, 1994 | King |
| | | 5388603 | Feb 14, 1995 | Bauer |
| | | 5467247 | Nov 14, 1995 | de Anda |
| | | 5471362 | Nov 28, 1995 | Gowan |
| | | 5473501 | Dec 5, 1995 | Claypool |
| | | 5519389 | May 21, 1996 | DeGunther |
| | | 5523654 | Jun 4, 1996 | Sikora |
| | | 5537771 | Jul 23, 1996 | Martin |
| | | 5571362 | Nov 5, 1996 | Gowen |
| | | 5592095 | Jan 7, 1997 | Meadows |

| **EXAMINER** | /Albert Gagliardi/ | **DATE CONSIDERED** | 04/21/2011 |
|---|---|---|---|

* EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.
1 Applicant's unique citation designation number (optional)
2 Applicant is to place a check mark here if English language Translation is attached.

### ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /AJG/

Receipt date: 04/04/2011                                    90009835 - GAU: 3992

| This List of References filed _4/4/2011_ | | | | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | REEX Control Number | **90/009,835** |
| | | | Patent No. | **6,999,295** |
| | | | Filing Date | **Nov 29, 2010** |
| | | | First Named Inventor | **Watkins** |
| | | | Art Unit | **3992** |
| | | | Examiner Name | **Albert J. Garliardi** |
| Sheet | 3 | of | 4 | Attorney Docket No: 101.01745 |

## US PATENT DOCUMENTS

| Examiner Initial * | Cite No ¹ | Document Number | Publication Date | Name of Patentee or Applicant of Cited Document |
|---|---|---|---|---|
| | | 5619402 | Apr 8, 1997 | Liu |
| | | 5625525 | Apr 29, 1997 | Coakley |
| | | 5627453 | May 6, 1997 | Sheehan |
| | | 5654868 | Aug 5, 1997 | Buer |
| | | 5698815 | Dec 16, 1997 | Ragner |
| | | 5754011 | May 19, 1998 | Frus |
| | | 5755056 | May 26, 1998 | Danner |
| | | 5799433 | Sep 1, 1998 | Danner |
| | | 5891172 | Apr 6, 1999 | Stendahl |
| | | 5915936 | Jun 29, 1999 | Brentzel |
| | | 5925983 | Jul 20, 1999 | Toda |
| | | 5962806 | Oct 5, 1999 | Coakley |
| | | 5973477 | Oct 26, 1999 | Chang |
| | | 5988036 | Nov 23, 1999 | Mangolds |
| | | 6022120 | Feb 8, 2000 | Chang |
| | | 6204476 | Mar 20, 2001 | Reynolds |
| | | 6237461 | May 29, 2001 | Poole |
| | | 6286242 | Sep 11, 2001 | Klebes |
| | | 6404613 | Jun 11, 2002 | Dowling |
| | | 6408905 | Jun 25, 2002 | Lee |
| | | 6479909 | Nov 12, 2002 | Hamm |
| | | 6549014 | Apr 15, 2003 | Kuthut |
| | | 6636412 | Oct 21, 2003 | Smith |
| | | 6643114 | Nov 4, 2003 | Stethem |
| | | 6679180 | Jan 20, 2004 | Warnagiris |
| | | 6791816 | Sep 14, 2004 | Stethem |
| | | 6823621 | Nov 30, 2004 | Gotfried |
| | | 6856238 | Feb 15, 2005 | Wootton |
| | | 6862994 | Mar 8, 2005 | Chang |
| | | 6877434 | Apr 12, 2005 | McNulty |
| | | 7012797 | Mar 14, 2006 | Delida |
| | | 7047885 | May 23, 2006 | Crickenberger |
| | | 7075770 | Jul 11, 2006 | Smith |
| | | 7102870 | Sep 5, 2006 | Nerheim |
| | | 7145762 | Dec 5, 2006 | Nerheim |
| | | 7174668 | Feb 13, 2007 | Locklear |

| EXAMINER | /Albert Gagliardi/ | DATE CONSIDERED | 04/21/2011 |
|---|---|---|---|

* EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.
1 Applicant's unique citation designation number (optional)
2 Applicant is to place a check mark here if English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /AJG/

Receipt date: 04/04/2011                                      90009835 - GAU: 3992

| This List of References filed 4/4/2011 | | REEX Control Number | 90/009,835 |
| --- | --- | --- | --- |
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | Patent No. | **6,999,295** |
| | | Filing Date | **Nov 29, 2010** |
| | | First Named Inventor | **Watkins** |
| | | Art Unit | **3992** |
| | | Examiner Name | **Albert J. Garliardi** |

| Sheet | 4 | of | 4 | Attorney Docket No: **101.01745** |
| --- | --- | --- | --- | --- |

### US PATENT DOCUMENTS

| Examiner Initial * | Cite No ¹ | Document Number | Publication Date | Name of Patentee or Applicant of Cited Document |
| --- | --- | --- | --- | --- |
| | | 7280340 | Oct 9, 2007 | Smith |
| | | 7570476 | Aug 4, 2009 | Nerheim |
| | | 7580237 | Aug 25, 2009 | Nerheim |
| | | 7602598 | Oct 13, 2009 | Nerheim |
| | | 7782592 | Aug 24, 2010 | Nerheim |
| | | 7800885 | Sep 21, 2010 | Brundula |
| | | 7916446 | Mar 29, 2011 | Nerheim |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No ¹ | Foreign Patent Document | Publication Date | Name of Patentee or Applicant of cited Document | T² |
| --- | --- | --- | --- | --- | --- |
| | | EP-228840 | Jul 17, 1991 | Lee | |
| | | FR-2317804 | Feb 4, 1977 | Smith Industries | X |
| | | GB-1109052 | Apr 10, 1968 | Parish | |
| | | GB-1239756 | Jul 21, 1971 | Collins | |
| | | GB-2085523 | Apr 28, 1982 | Endo | |
| | | KR-10-1998-072970 | Nov 5, 1998 | Kim | |
| | | KR-20-1992-0010198 | Jun 9, 1992 | | |
| | | KR-20-1994-0001616 | Jan 3, 1994 | Kim | |
| | | KR-20-1996-0001673 | Feb 22, 1996 | | |
| | | WO-98/11399 | Mar 19, 1998 | Sanchez | |
| | | WO-PCT/EP01/04862 | Nov 12, 2001 | Pohs | X |

### OTHER DOCUMENTS -- NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No ¹ | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T² |
| --- | --- | --- | --- |
| | | ~~NERHEIM, MAGNE H., "First Declaration of Nerheim Under 37 CFR §1.132", describes MX cartridge circuitry, 2011.~~ | |
| | | T'PRINA TECHNOLOGY, "Stun Guns - An Independent Report", 1994. | |
| | | ~~Neari amplare MPG, video demonstration by Michaels, March 29, 2011.~~ | |

| EXAMINER | /Albert Gagliardi/ | | DATE CONSIDERED | 04/21/2011 |
| --- | --- | --- | --- | --- |

* EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.
1 Applicant's unique citation designation number (optional)
2 Applicant is to place a check mark here if English language Translation is attached.

### ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /AJG/

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 90009835 | 6999295 |
| | Examiner | Art Unit |
| | ALBERT J GAGLIARDI | 3992 |

| SEARCHED | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| | | | |

| SEARCH NOTES | | |
|---|---|---|
| **Search Notes** | **Date** | **Examiner** |
| Reviewed patent prosecution history (6,999,295) | 12/16/10 | AJG |
| APS EAST (see search notes) | 12/16/10 | AJG |
| Search updated (see search notes) | 1/27/11 | AJG |
| Search updated (see search notes) | 4/21/11 | AJG |

| INTERFERENCE SEARCH | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| | | | |

| | |
|---|---|
| | |

Part of Paper No. : 20110421

# EAST Search History (Prior Art)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| S26 | 60 | US-20010032405-$.DID. OR US-20070019358-$.DID. OR US-2805067-$.DID. OR US-2896123-$.DID. OR US-3223887-$.DID. OR US-3295528-$.DID. OR US-3376470-$.DID. OR US-3450942-$.DID. OR US-3523538-$.DID. OR US-3569727-$.DID. OR US-3584929-$.DID. OR US-3626626-$.DID. OR US-3629652-$.DID. OR US-3717802-$.DID. OR US-3803463-$.DID. OR US-3819108-$.DID. OR US-3869645-$.DID. OR US-3917268-$.DID. OR US-3958168-$.DID. OR US-3972315-$.DID. OR US-4004561-$.DID. OR US-4027198-$.DID. OR US-4040425-$.DID. OR US-4092695-$.DID. OR US-4120305-$.DID. OR US-4129895-$.DID. OR US-4154205-$.DID. OR US-4162515-$.DID. OR US-4167036-$.DID. OR US-4220443-$.DID. OR US-4228405-$.DID. OR US-4242715-$.DID. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT | OR | ON | 2011/04/21 17:05 |
| S27 | 1 | re38794.pn. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT | OR | ON | 2011/04/21 17:05 |
| S28 | 70 | US-4370696-$.DID. OR US-4486807-$.DID. OR US-4510915-$.DID. OR US-4539937-$.DID. OR US-4541191-$.DID. OR US-4541848-$.DID. OR US-4589398-$.DID. OR US-4613797-$.DID. OR US-4688140-$.DID. OR US-4691264-$.DID. OR US-4755723-$.DID. OR US-4843336-$.DID. OR US-4846044-$.DID. OR US-4859868-$.DID. OR US-4872084-$.DID. OR US-4884809-$.DID. OR US-4900990-$.DID. OR US-4949017-$.DID. OR US-5060131-$.DID. OR US-5078117-$.DID. OR US-5163411-$.DID. OR US-5178120-$.DID. OR US-5193048-$.DID. OR US-5215066-$.DID. OR US-5225623-$.DID. OR US-5282332-$.DID. OR US-5317155-$.DID. OR US-5388603-$.DID. OR US-5467247-$.DID. OR US-5471362-$.DID. OR US-5473501-$.DID. OR US-5519389-$.DID. OR US-5523654-$.DID. OR US-5537771-$.DID. OR US-5571362-$.DID. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT | OR | ON | 2011/04/21 17:06 |
| S29 | 69 | US-5619402-$.DID. OR US-5625525-$.DID. OR US-5627453-$.DID. OR US-5654868-$.DID. OR US-5698815-$.DID. OR US-5754011-$.DID. OR US-5755056-$.DID. OR US-5799433-$.DID. OR US-5891172-$.DID. OR US-5915936-$.DID. OR US-5925983-$.DID. OR US-5962806-$.DID. OR US-5973477-$.DID. OR US-5988036-$.DID. OR US-6022120-$.DID. OR US-6204476-$.DID. OR US-6237461-$.DID. OR US-6286242-$.DID. OR US-6404613-$.DID. OR US-6408905-$.DID. OR US-6479909-$.DID. OR US-6549014-$.DID. OR US-6636412-$.DID. OR US-6643114-$.DID. OR US-6679180-$.DID. OR US-6791816-$.DID. OR US-6823621-$.DID. OR US-6856238-$.DID. OR US-6862994-$.DID. OR US-6877434-$.DID. OR US-7012797-$.DID. OR US-7047885-$.DID. OR US-7075770-$.DID. OR US-7102870-$.DID. OR US-7145762-$.DID. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT | OR | ON | 2011/04/21 17:07 |
| S30 | 12 | US-7280340-$.DID. OR US-7570476-$.DID. OR US-7580237-$.DID. OR US-7602598-$.DID. OR US-7782592-$.DID. OR US-7800885-$.DID. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT | OR | ON | 2011/04/21 17:08 |
| S31 | 212 | S26 S27 S28 S29 S30 | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT | OR | ON | 2011/04/21 17:08 |
| S33 | 2 | "6999295".pn. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT | OR | ON | 2011/04/21 17:15 |

| **Issue Classification** | **Application/Control No.** | **Applicant(s)/Patent Under Reexamination** |
|---|---|---|
| | 90009835 | 6999295 |
| | **Examiner** | **Art Unit** |
| | ALBERT J GAGLIARDI | 3992 |

| ORIGINAL | | INTERNATIONAL CLASSIFICATION | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **CLASS** | **SUBCLASS** | **CLAIMED** | | | | | | **NON-CLAIMED** | |
| 361 | 232 | H | 0 | 1 | T | 23 / 00 (2006.01.01) | | | |

### CROSS REFERENCE(S)

| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

| ☒ Claims renumbered in the same order as presented by applicant | | ☐ CPA | ☐ T.D. | ☐ R.1.47 |

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | | 17 | | 33 | | | | | | | | | | |
| | 2 | | 18 | | 34 | | | | | | | | | | |
| | 3 | | 19 | | 35 | | | | | | | | | | |
| | 4 | | 20 | | 36 | | | | | | | | | | |
| | 5 | | 21 | | 37 | | | | | | | | | | |
| | 6 | | 22 | | 38 | | | | | | | | | | |
| | 7 | | 23 | | 39 | | | | | | | | | | |
| | 8 | | 24 | | 40 | | | | | | | | | | |
| | 9 | | 25 | | | | | | | | | | | | |
| | 10 | | 26 | | | | | | | | | | | | |
| | 11 | | 27 | | | | | | | | | | | | |
| | 12 | | 28 | | | | | | | | | | | | |
| | 13 | | 29 | | | | | | | | | | | | |
| | 14 | | 30 | | | | | | | | | | | | |
| | 15 | | 31 | | | | | | | | | | | | |
| | 16 | | 32 | | | | | | | | | | | | |

|  | Total Claims Allowed: | | |
|---|---|---|---|
| | 40 | | |
| (Assistant Examiner)                    (Date) | | | |
| /ALBERT J GAGLIARDI/ Examiner.Art Unit 3992     4/21/2011 | | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner)                     (Date) | | 2 | 1 |

U.S. Patent and Trademark Office

Part of Paper No. 20110421



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

## BIB DATA SHEET

CONFIRMATION NO. 3645

| SERIAL NUMBER | FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 90/009,835 | 11/29/2010 RULE | 361 | 3992 | 101.01745 |

**APPLICANTS**
6999295, Residence Not Provided;
TASER INTERNATIONAL, INC.(OWNER), Scottsdale, AZ;
Ronald E. SMith(3RD PTY REQ), Oldsmar, FL;
Ronald E. Smith, Oldsmar, FL

** CONTINUING DATA ***************************
This application is a REX of 11/051,877 02/05/2005 PAT 6,999,295
  which is a CON of 10/447,447 05/29/2003 PAT 7,102,870
  which is a CIP of 10/364,164 02/11/2003 PAT 7,145,762

** FOREIGN APPLICATIONS ***************************

** IF REQUIRED, FOREIGN FILING LICENSE GRANTED **

| Foreign Priority claimed ☐ Yes ☑ No<br>35 USC 119(a-d) conditions met ☐ Yes ☑ No<br>Verified and /ALBERT J GAGLIARDI/<br>Acknowledged   Examiner's Signature | ☐ Met after Allowance<br><br>Initials | STATE OR COUNTRY | SHEETS DRAWINGS | TOTAL CLAIMS | INDEPENDENT CLAIMS |
|---|---|---|---|---|---|
| | | | | 40 | 7 |

**ADDRESS**
TASER INTERNATIONAL, INC.
17800 N. 85TH STREET
SCOTTSDALE, AZ 85255-9603
UNITED STATES

**TITLE**
DUAL OPERATING MODE ELECTRONIC DISABLING DEVICE FOR GENERATING A TIME SEQUENCE SHAPED VOLTAGE OUTPUT WAVEFORM

| FILING FEE RECEIVED 2520 | FEES: Authority has been given in Paper No._____ to charge/credit DEPOSIT ACCOUNT No._____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees (Filing) |
| | | ☐ 1.17 Fees (Processing Ext. of time) |
| | | ☐ 1.18 Fees (Issue) |
| | | ☐ Other _____ |
| | | ☐ Credit |

BIB (Rev. 05/07).

| _Reexamination_ | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| [barcode] | 90009835 | 6999295 |
| | Certificate Date | Certificate Number **C-1** |

| Requester Correspondence Address: | ☐ Patent Owner | ☒ Third Party |
|---|---|---|

SMITH HOPEN, PA
180 PINE AVENUE NORTH
OLDSMAR, FL 34677

| LITIGATION REVIEW ☒ | AJG (examiner initials) | 4/24/2011 (date) |
|---|---|---|
| | Case Name | Director Initials |
| None | | _Eric Keasel sr_ RY |
| | | |
| | | |
| | | |
| | | |

| COPENDING OFFICE PROCEEDINGS | |
|---|---|
| TYPE OF PROCEEDING | NUMBER |
| 1. None | |
| | |
| | |
| | |

| | |
|---|---|
| | |

U.S. Patent and Trademark Office

DOC. CODE **RXFILJKT**

# Exhibit 17

# F1000000 4132

(Requestor's Name)

(Address)

(Address)

(City/State/Zip/Phone #)

☐ PICK-UP    ☐ WAIT    ☐ MAIL

(Business Entity Name)

(Document Number)

Certified Copies _____    Certificates of Status _____

Special Instructions to Filing Officer:

Office Use Only

T. Burch SEP.15 2010



800185145648

800185145648
09/10/10--01021--004   **78.75

FILED
2010 SEP 14  PH 4: 00
SECRETARY OF STATE
TALLAHASSEE, FLORIDA

W16-42538

T. Burch SEP.15.2010

# COVER LETTER

**TO:**   New Filing Section
        Division of Corporations

**SUBJECT:** Karbon Arms, Inc.
_____
        Name of corporation - must include suffix

Dear Sir or Madam:

The enclosed "Application by Foreign Corporation for Authorization to Transact Business in Florida,"
"Certificate of Existence," or "Certificate of Good Standing" and check are submitted to register the
above referenced foreign corporation to transact business in Florida.

Please return all correspondence concerning this matter to the following:

Robert F. Gruder
_____
                        Name of Person

_____
                        Firm/Company

5505 Johns Road, Suite 702
_____
                        Address

Tampa, FL  33634
_____
                    City/State and Zip code

rgruder@carbonarms.com
_____
        E-mail address: (to be used for future annual report notification)

For further information concerning this matter, please call:

Robert Gruder                          at ( 813     ) 281-1061
_____
        Name of Person              Area Code & Daytime Telephone Number

**STREET/COURIER ADDRESS:**              **MAILING ADDRESS:**
New Filing Section                      New Filing Section
Division of Corporations                Division of Corporations
Clifton Building                        P.O. Box 6327
2661 Executive Center Circle            Tallahassee, FL  32314
Tallahassee, FL  32301

Enclosed is a check for the following amount:

☐ $70.00 Filing Fee   ☐ $78.75 Filing Fee &   ☐ $78.75 Filing Fee &   ☑ $87.50 Filing Fee,
                          Certificate of Status     Certified Copy          Certificate of Status &
                                                                            Certified Copy



# FLORIDA DEPARTMENT OF STATE
Division of Corporations

September 13, 2010

ROBERT F GRUDER
5505 GJOHNS ROAD STE 702
TAMPA, FL 33634

SUBJECT: KARBON ARMS, INC.
Ref. Number: W10000042938

We have received your document for KARBON ARMS, INC. and your check(s) totaling $78.75. However, the enclosed document has not been filed and is being returned for the following correction(s):

A certificate of existence or a certificate of good standing, dated no more than 90 days prior to the delivery of the application to the Department of State, duly authenticated by the secretary of state or other official having custody of the records in the jurisdiction under the laws of which it is incorporated/organized, must be submitted to this office. A translation of the certificate under oath of the translator must be attached to a certificate which is in a language other than the English language. A photocopy of this certificate is not acceptable.

Please return your document, along with a copy of this letter, within 60 days or your filing will be considered abandoned.

If you have any questions concerning the filing of your document, please call (850) 245-6928.

Tim Burch
Regulatory Specialist II                          Letter Number: 610A00021698

## APPLICATION BY FOREIGN CORPORATION FOR AUTHORIZATION TO TRANSACT BUSINESS IN FLORIDA

*IN COMPLIANCE WITH SECTION 607.1503, FLORIDA STATUTES, THE FOLLOWING IS SUBMITTED TO REGISTER A FOREIGN CORPORATION TO TRANSACT BUSINESS IN THE STATE OF FLORIDA.*

1. Karbon Arms, Inc.

    (Enter name of corporation; must include "INCORPORATED," "COMPANY," "CORPORATION," "Inc.," "Co.," "Corp," "Inc," "Co," or "Corp.")

    (If name unavailable in Florida, enter alternate corporate name adopted for the purpose of transacting business in Florida)

2. Deleware

    (State or country under the law of which it is incorporated)

3. 27-3164424

    (FEI number, if applicable)

4. 08/03/2010

    (Date of incorporation)

5. Perpetual

    (Duration:  Year corp. will cease to exist or "perpetual")

6. 09/08/2010

    (Date first transacted business in Florida, if prior to registration)
    (SEE SECTIONS 607.1501 & 607.1502, F.S., to determine penalty liability)

7. 5505 Johns Road, Suite 702, Tampa, FL  33634

    (Principal office address)

    5505 Johns Road, Suite 702, Tampa, FL  33634

    (Current mailing address)

8. Manufacturing

    (Purpose(s) of corporation authorized in home state or country to be carried out in state of Florida)

9. Name and street address of Florida registered agent:  (P.O. Box NOT acceptable)

    Name:    Robert F. Gruder

    Office Address:    5505 Johns Road, Suite 702

    Tampa                               , Florida  33634

    (City)                                            (Zip code)

**10. Registered agent's acceptance:**
*Having been named as registered agent and to accept service of process for the above stated corporation at the place designated in this application, I hereby accept the appointment as registered agent and agree to act in this capacity.  I further agree to comply with the provisions of all statutes relative to the proper and complete performance of my duties, and I am familiar with and accept the obligations of my position as registered agent.*

(Registered agent's signature)

11. Attached is a certificate of existence duly authenticated, not more than 90 days prior to delivery of this application to the Department of State, by the Secretary of State or other official having custody of corporate records in the jurisdiction under the law of which it is incorporated.

12. Names and business addresses of officers and/or directors:

**A. DIRECTORS**

Chairman: Robert F. Gruder

Address: 5505 Johns Road, Suite 702

Tampa, FL  33634

Vice Chairman: _____

Address: _____

_____

Director: _____

Address: _____

_____

Director: _____

Address: _____

_____

**B. OFFICERS**

President: Robert Gruder

Address: 5505 Johns Road, Suite 702

Tampa, FL  33634

Vice President: _____

Address: _____

_____

Secretary: _____

Address: _____

Treasurer: _____

Address: _____

**NOTE:** If necessary, you may attach an addendum to the application listing additional officers and/or directors.

13. _____
        (Signature of Director or Officer listed in number 12 of the application)

14. Robert Gruder Chairman/CEO
        (Typed or printed name and capacity of person signing application)

# Delaware

PAGE  1

### The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY "KARBON ARMS, INC." IS DULY
INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN
GOOD STANDING AND HAS A LEGAL CORPORATE EXISTENCE SO FAR AS THE
RECORDS OF THIS OFFICE SHOW, AS OF THE FIFTEENTH DAY OF
SEPTEMBER, A.D. 2010.

AND I DO HEREBY FURTHER CERTIFY THAT THE SAID "KARBON ARMS,
INC." WAS INCORPORATED ON THE SECOND DAY OF AUGUST, A.D. 2010.

AND I DO HEREBY FURTHER CERTIFY THAT THE FRANCHISE TAXES
HAVE NOT BEEN ASSESSED TO DATE.

FILED
2010 SEP 14  PM 4: 00
SECRETARY OF STATE
TALLAHASSEE, FLORIDA

Jeffrey W. Bullock, Secretary of State

4855229  8300

100909150

AUTHENTICATION: 8227721

DATE: 09-15-10

You may verify this certificate online
at corp.delaware.gov/authver.shtml

# Exhibit 18

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

In re:

Assignment for the Benefit
of Creditors of:

STINGER SYSTEMS, INC.                    Case No. 10-01-4854

Assignor,

To                                       Division C

LARRY S. HYMAN,

Assignee.

_____

AMENDED ORDER ON NOTICE OF AND MOTION TO AUTHORIZE THE
SALE OF ASSETS; TO ESTABLISH BIDDING AND SALE PROCEDURES;
AND NOTICE OF HEARING ON ANY TIMELY FILED OBJECTIONS

THIS CAUSE came on for hearing before this Court on September 15, 2010 at 3:45 p.m.
(the "Hearing") upon the Notice of and Motion to Authorize the Sale of Asset; to Establish
Bidding and Sale Procedures; and Notice of Hearing on Any Timely Filed Objections (the "Sale
Motion").[1]  In attendance at the Hearing were Eleni Parus Ketchum, counsel for the Assignee;
Larry Hyman, Assignee; Michael Roper, counsel for TASER International, Inc. ("TASER");
Kenneth Dante Murena, counsel for Castlerigg Master Investment, Ltd. ("Castlerigg"); and
Robert F. Gruder.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

On July 20, 2010, a petition was filed with this Court initiating an assignment of the
benefit of creditors for Stinger Systems, Inc. (the "Assignment").  Under the terms of the

_____

[1] Unless otherwise indicated, capitalized terms used herein shall have the meaning ascribed to such
terms in the Sale Motion.

Assignment, Larry Hyman (the "Assignee") became the Assignee of all the assets (the "Assets")
of the Assignor.  Pursuant to §727.108(1) of the Florida Statutes, the Assignee is to "collect and
reduce to money the assets of the estate . . . by public or private sale" for the benefit of the
estate's creditors.

The Assignee received from Karbon Arms, Inc. (the "Purchaser") an offer (the "Offer")
dated August 9, 2010 to purchase the Purchased Assets (defined in the Offer), all of which had
been assigned to Assignee pursuant to the Assignment.

Castlerigg has a duly perfected blanket lien on the Purchased Assets in connection with
its being owed approximately $5.4 million dollars and Vicis Capital Master Fund ("Vicis") has a
duly perfected blanket lien on the Purchased Assets in connection with its being owed
approximately $5.6 million dollars.  Neither Castlerigg nor Vicis would release their liens on the
Purchased Assets under any circumstances, including in the sale of the Purchased Assets to any
party.  The Offer provided for Purchaser's assumption of the Assignee's debts to Castlerigg and
Vicis and Purchaser's payment $25,000 in cash.   The Offer submitted by the Purchaser
referenced a "Seller".  On account of the Assignment and pursuant to Chapter 727 of the Florida
Statutes, the "Seller" referenced in the Offer is the Assignee.

On August 13 2010, the Assignee filed the Sale Motion and served the Sale Motion upon
creditors and parties in interest in this case.  The Assignee filed the Sale Motion providing notice
that an offer to purchase the Purchased Assets was received from the Purchaser and that the
Assignee intended to sell the Purchased Assets to the Purchaser and further providing notice of
certain sale procedures.  After due investigation, the Assignee made the determination that a sale
of the Purchased Assets as contemplated by the Sale Motion was in the best interest of the estate,
on account of the Purchased Assets having no equity above the secured debt of Castlerigg and
Vicis and the Offer providing for the assumption of Castlerigg's and Vicis' debts in the

approximate amount of $9 million dollars, thereby removing these claims from the Assignment estate, and resulting in the amount of $25,000 being available to the Assignment estate.

TASER submitted a competing bid for the Purchased Assets. This competing bid did not provide for the assumption of the debts of Castlerigg and Vicis. Further, the TASER bid did not comply with the Bid Conditions set forth in the Sale Motion. Therefore, the TASER bid was rejected and not considered by the Assignee.

The Court finds that notice of the Sale Motion to all creditors and parties in interest was appropriate. The Sale Motion outlined and provided notice of those certain bid procedures by which any competing offers or bids were to be submitted to the Assignee. The Sale Motion outlined Bid Conditions to which a competing bid was to conform. In addition, any objections to the Sale Motion and to the sale of the assets contemplated by the motion were to be filed by Wednesday, September 1, 2010.

On September 8, 2010, the Court entered its Order Granting the Sale Motion (the "Sale Order") approving the sale procedures and the sale contemplated by the Sale Motion. On September 8, 2010, TASER faxed its written objection to the Sale Motion (the "TASER Objection") to the Court and to counsel for the Assignee. The TASER Objection was not received by the Court or counsel for the Assignee until after the Court entered the Sale Order. In response to the TASER Objection, the Court scheduled same to be heard at the Hearing. After hearing arguments of counsel and other parties in attendance at the Hearing, the Court overruled the TASER Objection and found it appropriate to amend the Sale Order and enter an amended order setting forth the provisions herein.

The sale contemplated and approved by this Order between the Assignee as the Seller and Karbon Arms, Inc. as the Purchaser is an arms' length transaction pursuant to which the

Purchaser is a bonafide purchaser providing reasonably equivalent value in exchange for the Purchased Assets it is purchasing.

In addition, the sale is free and clear of all claims, liens, encumbrances and other interests in the Purchased Assets being purchased by the Purchaser, except those claims, liens, encumbrances and other interests held by Castlerigg and Vicis, which the Purchaser is expressly assuming and reaffirming and which shall remain in full force and effect. Purchaser is not assuming any debts, obligations or other liabilities of the Assignor, except those debts, obligations and liabilities to Castlerigg and Vicis, which the Purchaser is expressly assuming and reaffirming in accordance with the terms pursuant to which such debts, obligations and liabilities arose.

This Order does not affect the rights of Castlerigg or Vicis (i) to bring any claims, including without limitation collection claims, arising from the debts, obligations and liabilities that the Purchaser is assuming and reaffirming pursuant to this sale, and/or (ii) to enforce and/or foreclose on their respective liens, which continue to encumber the Purchased Assets pursuant to this sale.

The Court, having considered the Sale Motion, the arguments at the Hearing, and the record, finds that the Sale Motion is well taken and should be granted. Accordingly, it is,

ORDERED, ADJUDGED AND DECREED that:

1. The Sale Motion is granted.

2. The bid procedures outlined in the Sale Motion are approved.

3. The TASER Objection is overruled.

4. The Assignee is hereby authorized to take such actions as are necessary to complete the sale of the Purchased Assets (as defined in the Sale Motion) pursuant to the terms

of the Sale Motion to the Purchaser, in accordance with the terms of the Offer executed by the Purchaser, a copy of which was attached as Exhibit "A" to the Sale Motion.

5.   The Purchaser's offer to purchase the Purchased Assets for a purchase price of approximately $9,115,777.20 (the "Purchase Price"), which consists of (i) the assumption of the secured debts due and owing to both Castlerigg and Vicis, and (ii) a payment of $25,000 in cash, is selected as the highest and best offer for the Purchased Assets and the Assignee is authorized to sell the Purchased Assets more specifically described in the Sale Motion and the Offer to the Purchaser.

6.   The closing of this sale transaction shall take place as soon as possible.

7.   As set forth in the Sale Motion, the sale of the Purchased Assets is "As Is" "Where Is" and no representations or warranties have been given.   Assignee will deliver a Bill of Sale for the Purchased Assets to the Purchaser.

8.   Pursuant to this Order, all other claims of any kind whatsoever (except the secured claims of Castlerigg and Vicis) against Assignor shall only be paid pursuant to the provisions of Chapter 727 of the Florida Statutes.   Accordingly, the Purchaser shall acquire the Purchased Assets free and clear of any claims and encumbrances, other than the Assumed Obligations.

9.   This Court retains jurisdiction of any disputes or the necessity for any further relief arising from the sale of the Purchased Assets or under this Order.

DONE AND ORDERED at Hillsborough County, Florida this _____ day of _____, 2010.

_____
JAMES M. BARTON
CIRCUIT COURT JUDGE

5

# Exhibit 19

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 05:24 PM 02/23/2011*
*FILED 05:24 PM 02/23/2011*
*SRV 110202537 - 4855229 FILE*

STATE OF DELAWARE
CERTIFICATE OF CONVERSION
FROM A CORPORATION TO A
LIMITED LIABILITY COMPANY PURSUANT TO
SECTION 18-214 OF THE LIMITED LIABILITY ACT

1.) The jurisdiction where the Corporation first formed is __DELAWARE__ .

2.) The jurisdiction immediately prior to filing this Certificate is __DELAWARE__ .

3.) The date the corporation first formed is __AUGUST 2, 2010__ .

4.) The name of the Corporation immediately prior to filing this Certificate is
__KARBON ARMS, INC.__ .

5.) The name of the Limited Liability Company as set forth in the Certificate of
Formation is __KARBON ARMS, LLC__ .

IN WITNESS WHEREOF, the undersigned have executed this Certificate on the
__22nd__ day of __February__ , A.D. __2011__ .

By: _____
                Authorized Person

Name: __Robert Gruder__
                Print or Type

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 05:24 PM 02/23/2011*
*FILED 05:24 PM 02/23/2011*
*SRV 110202537 - 4855229 FILE*

**STATE *of* DELAWARE**
**LIMITED LIABILITY COMPANY**
**CERTIFICATE *of* FORMATION**

• **First:** The name of the limited liability company is   KARBON ARMS, LLC

• **Second:** The address of its registered office in the State of Delaware is
  1209 ORANGE STREET   in the City of   WILMINGTON
  Zip Code 19801

  The name of its Registered agent at such address is
  The Corporation Trust Company

• **Third:** (Insert any other matters the members determine to include herein.)

**In Witness Whereof,** the undersigned have executed this Certificate of Formation this
22nd day of February , 20 11 .

By:

Authorized Person(s)

Name: Robert Gruder
Typed or Printed

# Exhibit 20

**From:** George DiScioscia [mailto:GeorgeD@karbonarms.com]
**Sent:** Tuesday, September 28, 2010 7:41 AM
**To:** Jerry Kovar
**Subject:** RE: Karbon Arms

Captain Kovar,

Stinger Systems assets have officially been purchased by Karbon Arms, Inc.  Karbon has made offers to employees of Stinger and they have accepted employment then.  The address and phone numbers will be the same.

The new gun developed by Karbon Arms is patented and called the Karbon MPID (multi-purpose immobilization device) is really incredible. The Karbon will be priced at $550 retail in the U.S.  Features include:

1. Unibody construction. Meaning it is a single solid core of plastic rather than two haves like the Taser and the Stinger. Therefore, it is almost indestructible with normal police use

2. The safety on/off switch will be a push button switch mounted on top of the gun behind the laser and flashlight.  This will allow for truly right or left handed users to turn on with ease.  Being flush mounted and a push button style of switch it will be unbreakable

3.  Features that were seen in the Stinger like off the shelf batteries, cartridge eject system, and a covered cartridge housing will be employed

4. The battery plate will be side mounted in the handle. This configuration will make it almost impossible to fall out if dropped.

5.  The camera will be truly off the shelf plug and play ready

6.  The gun will be thinner than the Taser and Stinger models

Karbon's website will be up next week. www.karbon.arms

The new Karbon MPID is patented technology. A copy of the patent is attached.  As you can see by the cover page of the patent, the patent examiner cites several patents that they reviewed during their examination.  Among them is the patent Taser sued Stinger for, patent number 6,999,295.  The patent was issued with full knowledge of this previous patent.

The Karbon technology is different than the Stinger S-200 technology in that it operates in a single mode unlike the Stinger and Tasers.  Because the Karbon circuit has the ability to employ T-Wave avoidance technology and have the ability to program the width of the pulse groups, Karbon believes that will make technology described in the "295" patent antiquated.

The Karbon technology was developed completely outside of Stinger and has not affiliation with the S-200.  Some of the novel features of the S-200 have been incorporated into the Karbon MPID like the use of off-the-shelf batteries, cartridge eject system, and a covered cartridge. Other than that the Karbon is a revolutionary new EID and technology.

**George DiScioscia**

**Regional Sales Director**

**Karbon Arms**
**5505 Johns Rd Suite 702**
**Tampa, Fl 33634**
**866-788-6746 ext 234**
**727-657-5671**
**813-288-9148 fax**
**Georged@karbonarms.com**
**WWW.Karbonarms.com**

---

**From:** JERRY KOVAR [mailto:JERRY.KOVAR@co.travis.tx.us]
**Sent:** Thursday, September 23, 2010 7:11 AM
**To:** George DiScioscia
**Subject:** Re: Karbon Arms

Interesting.  Haven't I seen this same product before with the Stinger name?

>>> "George DiScioscia" 09/22/10 2:47 PM >>>


Captain Kovar,

I hope your week is off to a great start!!  I wanted to check in to see how everything is going with your Electronic Immobilization Device (EID) program. Karbon Arms has developed some exciting technology and is now the fastest growing EID company in the World. I?d like the opportunity to send you more information on our products.  Please let me know if I can be of any assistance.  Have a great day and I look forward to discussing how Karbon Arms can make your department a leader in EID technology. **WWW.Karbonarms.com**


**Error! Filename not specified.**

**George DiScioscia**

**Regional Sales Director**

**Karbon Arms**
**5505 Johns Rd Suite 702**
**Tampa, Fl 33634**
**866-788-6746 ext 234**
**727-657-5671**
**813-288-9148 fax**
**Georged@karbonarms.com**